[Crim. No. 164.   Third Appellate District.—November 13, 1911.]

## THE PEOPLE, Respondent, v. A. B. KELLY, Appellant.

CRIMINAL LAW—TESTIMONY AT PRELIMINARY EXAMINATION—OATH OF
.OFFICIAL REPORTER NOT REQUIRED—PRESUMPTION.—When the testi-
mony at a preliminary examination was taken by the official re-
porter, it must be presumed that he had duly qualified by taking his
official oath faithfully to discharge his duties; and it was not
necessary that he should be sworn at the preliminary hearing.

ID.—PRIMA FACIE CORRECTNESS OF REPORTER'S TRANSCRIPT—USE AS TO
ABSENT WITNESS—OATH OF INTERPRETER—PRESUMPTION—BURDEN
OF PROOF.—The Penal Code makes the transcript of the official
reporter, when written out in longhand, and certified to as a correct
statement of all the testimony and proceedings in the case, *prima
facie* a correct statement thereof; and where the deposition of an
absent witness taken at the preliminary examination is so certified,
though taken through an interpreter, it must be presumed that the
interpreter was sworn as a witness, and the burden is upon the
defendant to show the contrary.   Such deposition may be read as
*prima facie* correct where, after due diligence, the absent witness
cannot be found in the state.

ID.—DUE DILIGENCE SHOWN—FOUNDATION FOR DEPOSITION—DISCRETION
OF COURT.—It is held that, upon the facts appearing, there was a
sufficient showing that, after due diligence, the absent witness could
not be found in the state, and that it cannot be said that more
could reasonably have been done to find the absent witness.   The
question whether a sufficient foundation has been laid for the ad-
mission of the deposition of the absent witness is largely within the
discretion of the trial court.

ID.—REFUSAL OF REQUESTED INSTRUCTION AS TO "REASONABLE DOUBT"
NOT PREJUDICIAL.—A requested instruction as to "reasonable doubt,"
concluding: "If, upon such consideration, the minds of the jury are
not firmly and abidingly satisfied of the defendant's guilt, if the
conscientious judgment of the jurors wavers and oscillates, then
the doubt is reasonable, and you should acquit," to be free from
objection should limit the wavering and oscillation to the final judg-
ment of the jury, and it was not prejudicial error to refuse the
same where full and fair instructions as to the law of "reasonable
doubt" are embodied in the charge of the court; and the rule stated
in the Penal Code is given and emphasized in many instructions
and in various forms of expression, although no specific definition
of reasonable doubt was given.

ID.—NEW RULE IN CONSTITUTION—REVERSAL IN CRIMINAL ACTIONS—
"MISCARRIAGE OF JUSTICE."—The new rule, fixed in the constitution,

by which appellate courts are now to be guided in criminal cases, is that "no judgment shall be set aside or new trial granted in any criminal case on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of opinion that the error complained of has resulted in a miscarriage of justice." It is held that this court cannot say that the error as to an instruction now considered, conceding it to have been error, "has resulted in a miscarriage of justice."

APPEAL from a judgment of the Superior Court of Merced County, and from an order denying a new trial. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

B. F. Fowler, for Appellant.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney General, for Respondent.

CHIPMAN, J.—Defendant was convicted of the crime of robbery and, upon judgment of conviction, was sentenced to twelve years in the Folsom prison. He appeals from the judgment and the order denying his motion for a new trial.

In his brief, defendant presents but two objections to any of the proceedings had at the trial.

First: It is claimed that the deposition of the prosecuting witness, Grunitz, taken at the preliminary examination, was improperly read in evidence by the district attorney for the following reasons: 1. Because his testimony "was taken through an interpreter in a foreign language and was not taken in conformity with section 869 of the Penal Code"; 2. Because such diligence in securing the attendance of the witness, as is required by subdivision 3, section 686 of the Penal Code, was not shown.

It appeared that the deposition was taken before the magistrate through the official reporter, reduced to longhand and filed with the clerk with the reporter's notes and showed that the witness was duly sworn. It did not appear that either the reporter or the interpreter was sworn. The certificate of the reporter read as follows: "I hereby certify that

the within transcript numbered from 1 to 15 both inclusive is a full, true and correct transcript of my shorthand notes, and a full, true and correct statement of all the testimony given and proceedings had upon the preliminary examination in the Justice's Court of No. 2 Township, County of Merced, State of California, in the case entitled The People of the State of California vs. A. B. Kelly, on Friday, December 10, 1910, before J. J. Griffin, Justice of the Peace in and for No. 2 Township. (Signed) J. T. Conley, Shorthand Reporter.'' The transcript shows as follows: ''Richard Grunitz. A witness on behalf of the People, after being duly sworn testified as follows. (Through the German Interpreter L. Wagner.)'' Then follows the deposition. The transcript shows that Grunitz was duly sworn. It must be presumed that the official reporter had duly qualified by taking his official oath to faithfully discharge his duties. It was not necessary that he be sworn at the preliminary hearing.

The question, then, is: Could the deposition be read without proof that the interpreter was sworn? The point was distinctly raised at the time the offer was made and later by motion to strike out.

Section 869 of the Penal Code declares that the transcript of the reporter, ''when written out in longhand writing, and certified as being a correct statement of such testimony and proceedings in the case, shall be *prima facie* a correct statement of such testimony and proceedings.'' Section 686 of the same code provides that the defendant is entitled to be confronted with the witness against him, ''except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness; . . . the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane or cannot with due diligence be found in the state.''

In *People* v. *Lewandowski*, 143 Cal. 574, 577, 578, [77 Pac. 467], it was held that, under these statutes, the transcript in longhand of the shorthand notes, duly certified and filed, ''is placed upon the footing of a deposition.'' Said the court:

17 Cal. App.—29

"Whether taken through an interpreter or not, it is in each case the original testimony of the witness, in the same sense and to the same extent as is the testimony of the witness present at the trial, given through the medium of an interpreter, his original testimony on the trial, and in the cases provided by law may be read in evidence as such.'' It thus appears that the deposition is *"prima facie* a correct statement of such testimony'' and "may be read,'' where, after due diligence, the witness cannot be found in the state. The statute does not require it to be shown at the time the deposition is offered to be read that the interpreter was sworn at the preliminary hearing. It was, of course, the duty of the magistrate to place him under oath the same as any other witness, but the burden of proving that he was not sworn was on the defendant. Nor does the statute require proof that the reporter was sworn before taking his notes of the testimony as a prerequisite to making the deposition *"prima facie* correct.''

Was due diligence shown?

Before the deposition was offered, the district attorney submitted his proof of diligence in endeavoring to secure the personal attendance of the witness. It appeared that the witness had been working in the neighborhood on a ranch and, it may be inferred from the testimony, as a blacksmith. The case was first tried on February 23 and 24, 1911, and the prosecuting witness testified at that trial. He was then working in the neighborhood. He informed the sheriff not long after, some time in the early part of March, that he was going to San Francisco to work, and gave the number of the place on Folsom street where he could be found. The district attorney knew that he was intending to go there, but he testified that he did not think it necessary to detain him and believed he would have no trouble in finding him; that he was not a "wandering character.'' The sheriff went to San Francisco a few days before the trial, which began on April 10, 1911, taking with him a subpoena to serve upon the witness; he went to the number given by the witness and found a shop, but did not find the witness; he visited several blacksmith-shops in the city in search of the witness without avail; he made previous inquiry in Merced county where witness had been living but did not find him; subpoenas were sent to neighboring counties shortly before the trial and were re-

turned "not found," as was also a subpoena given to the sheriff of the city and county of San Francisco. We cannot see what more could reasonably have been done to find the witness. Furthermore, the question whether a sufficient foundation has been laid is largely within the discretion of the trial court. (*People* v. *Lederer, ante,* p. 369, [119 Pac. 949].)

It should be observed that witness Grunitz testified at the first trial and defendant introduced and read to the jury his testimony given at that trial. Just why the defendant made use of this testimony after having endeavored to prevent the reading of the testimony taken at the preliminary hearing is not apparent, unless it was to point out certain conflicting statements which in fact were not very material. In substance the testimony on both occasions was the same.

The only remaining error pointed out in the brief relates to the refusal of the court to give an instruction on reasonable doubt as formulated by defendant. It follows the stereotyped instruction on that subject and concludes thus: "But if, upon such consideration the minds of the jury are not firmly and abidingly satisfied of the defendant's guilt, if the conscientious judgment of the jurors wavers and oscillates, then the doubt of the defendant's guilt is reasonable, and you should acquit." This instruction was refused because given elsewhere. The court gave several instructions on the subject of reasonable doubt, although not distinctly defining the terms, i. e., the court told the jury that "the prosecution must prove to you to a moral certainty and beyond all reasonable doubt, that the defendant and no one else committed the offense," etc. Again: "It is not sufficient that the circumstances proved coincide, account for, and therefore render probable the theory sought to be established by the prosecution, but that they exclude to a moral certainty every other reasonable hypothesis than the single one of guilt, or the jury must find the defendant not guilty."

Again, in speaking of the recent possession of stolen property, the court told the jury: "If the defendant under such circumstances offers and produces an explanation of the possession of such property, it is for you to say under all the evidence whether or not such explanatory evidence produces in your minds a reasonable doubt, and if such evidence does produce in your minds a reasonable doubt of his guilt, then

he is entitled to an acquittal at your hands.'' The jury were also told a reasonable doubt of defendant's guilt need not result from the testimony affirmatively produced at the trial by defendant—''it may arise as well from and be founded upon a weakness or defect in the testimony introduced on the part of the prosecution''; also that the presumption of innocence remains with defendant ''until the end of the case and until his guilt is proven to a moral certainty and beyond all reasonable doubt.'' In several other instructions the necessity for establishing facts, indicating guilt, to a moral certainty and beyond a reasonable doubt is emphasized. We are aware that trial courts usually and very properly round out their instructions on this subject by a definition of reasonable doubt. But are these terms themselves so shrouded in doubt that it is prejudicial error to refuse to define their meaning? Are the rights of a defendant prejudiced by leaving the jury to determine what the court means when they are told that they must find the facts ''to a moral certainty and beyond a reasonable doubt''? Section 1096 of the Penal Code provides as follows: ''A defendant in a criminal case is presumed to be innocent until the contrary is proved, and in cases of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal.''

In *People* v. *Cohn,* 76 Cal. 386, [18 Pac. 410], where the court was by the defendant asked but refused to instruct the jury that ''The burden is upon the prosecution of establishing every element of the crime of which the defendant may be convicted, beyond a reasonable doubt,'' and also ''omitted to give any other instruction of a like character, or stating or bearing upon the rule as to reasonable doubt in criminal cases,'' the supreme court reversed the judgment. But we have found no case holding, where the rule stated in the Penal Code is given and is emphasized in many instructions and in various forms of expression, that it would be so prejudicial as to demand a reversal, for the court to refuse to give a specific definition of reasonable doubt. We find ourselves unwilling to so hold. It will be noticed that, in the concluding paragraph of the instruction refused, the jury are told that ''if their conscientious judgment wavers and oscillates, then the doubt of the defendant's guilt is reasonable,'' and they should acquit. To make this statement free from objection, it should

be made to apply to the judgment of the jury in their final conclusion and not to direct them to acquit whenever they find their minds wavering or oscillating.    Jurors often change their minds many times during the course of their deliberations. They may have reasonable doubts during their deliberations; their judgment may waver and oscillate at such times; it is when they finally decide that the jurors' minds must be ''abidingly satisfied of the defendant's guilt.''   However this may be, the rule by which we are to be guided is now, that ''no judgment shall be set aside or a new trial granted in any criminal case on the ground of misdirecting the jury or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.''   (Senate Am. No. 24 of the constitution, recently adopted [Stats. 1911, p. 1798].)   It is not necessary to indicate the full scope and meaning of this amendment, or how far it will work a reformation in the examination of cases brought up for review by appeal. We are clearly of the opinion that we cannot say that the error now being considered, conceding it to have been error, ''has resulted in a miscarriage of justice.''

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.