[Crim. No. 306. Second Appellate District.—February 4, 1914.]

THE PEOPLE, Respondent, v. WALTER DEAN, Appellant.

CRIMINAL LAW—DEPOSITION TAKEN UPON PRELIMINARY EXAMINATION—
INSUFFICIENT IDENTIFICATION.—In a prosecution for homicide the
deposition of a witness, taken before the magistrate upon the pre-
liminary examination of the defendant, is not admissible, if it is
without title or cause, although in his certificate the reporter cer-
tifies the same to be a "correct report of the testimony and
proceedings upon the preliminary examination of the above-entitled
cause."

ID.—ADMISSION OF DEPOSITION IN EVIDENCE—HARMLESS ERROR.—But
the admission of such deposition in evidence was not prejudicial
to the substantial rights of the defendant, where the testimony given
by the witness in the deposition, while material, was merely cumula-
tive of the testimony given by another witness, and the jury could
not properly have reached a verdict other than that given, even
if the deposition had been excluded.

APPEAL from a judgment of the Superior Court of Im-
perial County and from an order refusing a new trial.
Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and George Beebe, Deputy
Attorney-General, for Respondent.

Walter T. Casey, and Wm. J. Hanlon, as *Amici Curiae.*

SHAW, J.—Defendant appeals from a judgment whereby
he was sentenced to life imprisonment for the murder of his
wife.

The attorneys to whom his defense was intrusted not only failed to file any brief in support of the appeal, but on the day set for the hearing thereof, of which they had due notice, made no appearance in his behalf. Owing to the gravity of the offense of which defendant was convicted, the deputy attorney-general hesitated to move for a dismissal of the appeal under and pursuant to section 1253 of the Penal Code; whereupon other attorneys acting as *amici curiae,* offered to examine the record of upward of six hundred pages and assist the court by filing a brief in the case. With the aid of the brief so filed, wherein attention has been directed to what they conceive to be reversible error disclosed by the transcript, the court has examined the voluminous record presented.

Defendant and his wife were engaged in the business of conducting a restaurant in the city of Brawley, Imperial County. A woman by the name of Carrie Gunderson was in the employ of defendant as a waitress. The presence of this woman was the cause of frequent quarrels between defendant and his wife, the former insisting that the conduct of the Gunderson woman was such as to render her an unfit associate for his wife. His threats to discharge her had been met by statements from his wife that if he did so she would also leave. On the evening when the homicide was committed, defendant's wife, with his consent, accompanied the Gunderson woman and two male companions upon an automobile ride, and, as we gather from the record, remained out much longer than defendant had expected them to stay. Upon returning from the ride Miss Gunderson went to her room, adjoining that occupied by defendant and his wife, where she was joined by one of the men who had accompanied her on the auto ride. Defendant was in his room, and, immediately upon his wife entering, an altercation arose between them, during or following which three pistol shots were heard in the chamber so occupied by them. The proprietor of the hotel immediately broke open the door leading to the room, when defendant's wife was found in a dying condition with two pistol wounds upon her body; and a few minutes thereafter defendant was found about two blocks from the hotel with a bullet wound in his chest. No one other than defend-

ant and his wife was in the room at the time, and no one saw the shots fired.

Upon the theory that evidence offered was sufficient to show that Carrie Gunderson, who had testified at the preliminary hearing of defendant, could not with due diligence be found in the state (Pen. Code, secs. 686, 869), her deposition taken before the magistrate upon the preliminary examination of defendant was, over defendant's objection, read in evidence. This ruling is assigned as the chief error upon which a reversal is claimed. Waiving the question as to the alleged insufficiency of the evidence to show proper diligence in an effort to find the witness, without which the deposition was not entitled to be read, and as to the sufficiency of which we express grave doubts, the objection that the deposition had not been identified as a transcript of the evidence given by the witness before the magistrate at the preliminary examination of defendant upon being charged with the offense, and therefore incompetent, irrelevant, and immaterial, should have been sustained. The deposition as offered in evidence is without title or cause. It commences: "Carrie Clark, called by the plaintiff and duly sworn, testified as follows," followed by questions and answers. In his certificate the reporter certifies the same to be a correct report of the testimony and proceedings upon the preliminary examination of the *above entitled cause,* but inasmuch as the cause wherein the testimony was taken is not entitled, and for aught that appears in the record may have been the testimony taken in a case other than the one wherein defendant was charged with the crime for which he was being tried, such reference in the certificate is meaningless as an aid to identification of the document. In *People* v. *Ward,* 105 Cal. 652, [39 Pac. 33], the supreme court in discussing a like error committed by the trial court, said: "The transcript of the testimony should, moreover, be so authenticated that an inspection of it will show that it is testimony which was taken at the preliminary examination of the accused who is then on trial, and must not depend upon the memory of the magistrate or of the reporter. To allow oral proof at the trial for the purpose of showing against what defendant, or upon what charge, or at what time the testimony was taken reduces the proceeding from a record required by the statute, to the memory of the re-

porter—shadowy or clear, according to the length of intervening time or the number of examinations that he may have reported. (See *People* v. *Carty*, 77 Cal. 215, [19 Pac. 490].) In the present case the reference in the certificate of the reporter to the 'within entitled action' has no effect in identifying the 'copy of the testimony' with the examination of the defendant, since it appears by the bill of exceptions that the copy so certified does not contain the name of any court or cause." (See, also, *People* v. *Lewandowski*, 143 Cal. 579, [77 Pac. 467]; *People* v. *Buckley*, 143 Cal. 375, [77 Pac. 169].)

Notwithstanding the error and the fact that the evidence thus improperly admitted was material, though cumulative, we are constrained to hold, upon a careful examination of the entire record, that the defendant's substantial rights were not prejudiced by reason of the erroneous ruling. The evidence properly received clearly tended, without substantial contradiction, to show that defendant's wife was conducting herself in a manner which met with his disapproval; that she had resented any interference or efforts on his part to control her conduct; that he disliked the Gunderson woman, with whom he had on the day of the homicide quarreled and threatened to discharge her; that his wife stated, if he carried out such threat, she also would leave; that after this quarrel he and deceased went for a buggy ride, he taking with him the revolver, during which ride he discharged all the shells for same then in his possession, and on his return home about five o'clock P. M., he placed the pistol, unloaded, in a dresser drawer in the room occupied by himself and wife; that later in the evening his wife expressed a desire to accompany this Carrie Gunderson and two male companions on an auto ride, to which defendant gave his assent, but asked her not to stay long; that after the party left he went to bed but could not sleep; whereupon he got up, and having no shells with which to load his revolver, he went out and at some inconvenience procured them; that these loose shells were placed in the drawer with the unloaded pistol; that upon his wife returning to the room, and after defendant had locked the door, he and his wife engaged in an altercation, during which he was heard to say, "I am going to kill you right now," or words to that effect, immediately following which was the report of a gun in the room, followed by a woman's scream.

There was a slight interval, when two other shots were fired.
Upon breaking the door open deceased was found alone with
a bullet wound in her left hand and wrist and a fatal bullet
wound in her back; that defendant was found about two
blocks away, having in his possession the revolver, at which
time he stated that he had shot his wife and himself, and to
and in the presence of several other persons he made like
admissions as to the shooting. The physical conditions were
such as to preclude the theory that any one other than some
one in the room could have shot the deceased, and no one
other than defendant and his wife was in the room. In ad-
dition to all of this, it was shown that defendant had made
statements indicative of threats to kill his wife, unless she
changed her course of action; that after the shooting he
stated that he stood for some time at what was known as
Stall's Corner, with the intention of intercepting the auto-
mobile upon its return to the city and committing the act,
or, as he expressed it, get the entire party in the machine;
but owing to the fact that he got chilly and cold he went to
a pool room, from which he witnessed the arrival of the party
on its return to the city. According to defendant's story,
he was in the room when his wife returned; that she stated
to him upon her return that she intended to join the Gunder-
son woman for the night, to which defendant objected, stating
that if she did he would have the latter arrested, to which
deceased replied that "you cannot do that without having
me arrested"; and he said, "Very well, I will do that then";
whereupon she made reply, "Yes, if you do, you son-of-a-
bitch, I will kill you." Upon which defendant says: "I
started to go toward the door to go out and she thrust . . .
this gun here at me (being the gun which, unloaded, he had
deposited in the dresser drawer), and I grabbed at it with
my left hand and it went off. I grabbed hold of it and in
the struggle to get it away from her, it snapped once or twice,
I don't know which, and then it went off and hit me here,
and she released the gun . . . I turned to go . . . when I
heard two shots fired in rapid succession, and before I could
get out of the portieres there was another shot fired and I
went out of the back door and I run." This evidence not
only points unmistakably to the fact that defendant com-
mitted the homicide, but could leave no reasonable doubt in

the minds of an intelligent jury as to the fact that it was a deliberate and premeditated killing with malice aforethought. The evidence contained in the deposition erroneously admitted was to the effect that the witness heard defendant say, "I am going to kill you right now"; that the statement was followed by the report of a pistol in the room, followed by the scream of a woman. This was merely cumulative of the testimony given by her male companion who was present with her at the time and testified to the same facts. It is apparent that the substantial rights of defendant were not prejudiced by reason of the admission of the deposition in evidence. Had it been excluded, the jury could not properly have reached a verdict other than that given. This being true, the error should be disregarded. (Pen. Code, sec. 1404.)

The judgment and order denying defendant's motion for a new trial are affirmed.

Conrey, P. J., and James, J., concurred.