[Crim. No. 1127. Department One.—June 15, 1904.]

## THE PEOPLE, Respondent, v. BRUNO LEWANDOWSKI, Appellant.

CRIMINAL LAW—EVIDENCE—DEPOSITION AT PRELIMINARY EXAMINATION —PROOF OF DILIGENCE.—The question whether it has been satisfactorily shown that a witness whose deposition was taken at the preliminary examination of the defendant cannot with due diligence be found within the state is one of fact addressed to the trial court, to be determined by it from the evidence adduced before it; and where a sufficient basis for the admission of the deposition appears in the evidence, the ruling of the court will not be disturbed upon appeal.

ID.—SUBPŒNAS TO SHERIFFS.—Subpœnas issued to the sheriffs of several counties which were returned unserved were properly admitted in evidence, in connection with other evidence of diligent search, for the purpose of showing what had been done toward making service upon the missing witness.

ID.—DEPOSITION TAKEN THROUGH INTERPRETER.— Where the proper foundation has been laid for the admission of the deposition, the fact that it was taken through an interpreter in a foreign language

does not affect its admissibility, if it is properly transcribed in longhand and certified by the reporter as provided by the statute.

ID.—EXPLANATION BY REPORTER—IDENTIFICATION OF DEFENDANT—ABSENCE OF OBJECTION.—An explanation by the reporter that the word "pointing" used in the deposition, was used in reference to a pointing at the defendant, if objectionable, was properly treated as evidence, where it was admitted without objection, and not stricken out, and the defendant could not be prejudiced thereby where he was otherwise sufficiently identified.

ID.—REASONABLE DOUBT—INSTRUCTION.—An instruction as to reasonable doubt, in the language used by Chief Justice Shaw in *Commonwealth* v. *Webster*, 5 Cush. 320,[1] will not be considered misleading.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. W. P. Lawlor, Judge.

The facts are stated in the opinion of the court.

John F. Glover, and Nathan C. Coghlan, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

ANGELLOTTI, J.—Defendant, with another, was charged by information with robbery, and, on separate trial, was convicted and sentenced to imprisonment for seven years. He appeals from the judgment and from an order denying his motion for a new trial.

There was evidence tending to show that one James Saito (a Japanese), while on his way home about one or two o'clock of the morning of February 5, 1903, was "held up" by three men on Sacramento Street, in San Francisco, two of whom held pistols to his head, while defendant went through his pocket and took from his person a gold watch and eighty cents in coin. Saito reported the robbery promptly, and about 2:30 P. M. of the same day the defendant, with his co-defendant, Larkin, was arrested, and on defendant's person was found a revolver, the gold watch taken from Saito, and eighty cents in coin.

Appellant does not attack the sufficiency of the evidence, if the testimony of Saito is to be considered. Saito appeared and testified at the preliminary examination, but did not ap-

[1] 52 Am. Dec. 711.

pear at the trial. Against defendant's objection, Saito's deposition taken at the preliminary examination was read, and, as appellant says in his brief, "the points raised on this appeal have almost exclusively to do with this testimony."

1. Objection was made to the reading of Saito's deposition in evidence on the ground that the proper foundation had not been laid, in that it had not been satisfactorily shown, as required by subdivision 3 of section 686 of the Penal Code, that the witness Saito could not with due diligence be found within the state. The court found as follows: "It being satisfactorily shown to the court that the said witness cannot with due diligence be found within the state of California, the objection . . . is overruled."

That the right of a defendant to be confronted in person by the witnesses against him is a most important one, and that the trial court should be fully satisfied by the evidence that the absent witness cannot with due diligence be found in the state before allowing the deposition of such witness taken on the preliminary examination to be read, may be freely conceded.

The question, however, as to whether it is satisfactorily shown that such witness cannot with due diligence be found within the state is a question of fact that is addressed to the trial court, to be determined by it from evidence introduced before it (*People* v. *Plyler,* 126 Cal. 379), and with the determination of that question of fact by the trial court this court will not interfere, unless the evidence thereon is such as to satisfy the court that the trial court abused the discretion confided to it in holding that due diligence had been used, and that the witness could not be found. (*People* v. *Witty,* 138 Cal. 576; *People* v. *Reilly,* 106 Cal. 648.)

We have carefully examined the evidence on this subject in regard to the witness Saito, and cannot say that the trial court was not justified in its conclusion. The witness had left the employment of one Brown six weeks before the trial, and Brown knew nothing of his whereabouts. A police officer, armed with a subpœna, testified that for a month he had been endeavoring to find the witness, and had visited various Japanese resorts in San Francisco, restaurants and lodging-houses, where he thought it probable information could be obtained, various employment offices, acquaintances of the witness, and the Japanese consul, and had been able to learn

nothing concerning him, except that one man had seen him in San Francisco about two weeks before the trial. With this man he made a further search, but was unable to obtain any further information of his whereabouts. Two other witnesses testified to efforts to find the witness, and their failure to find him or to discover anything about him. Subpœnas had been sent to the sheriffs of various adjoining counties, and they had been returned unserved, the sheriffs certifying to their inability to find the witness. All this afforded a sufficient basis for the finding of the trial court.

There was no error committed in allowing the subpœnas for this witness that had been issued and returned unserved to be received in evidence "for the purpose of showing what had been done toward making service upon the missing witness."

2. We are unable to appreciate the applicability of the contention that "the deposition and not the testimony of the stenographer should have been introduced in evidence, if the testimony was admissible at all."

The record shows that the deposition, which, so far as appears, had been properly certified and filed by the shorthand reporter, was introduced and read in evidence.

Whatever evidence was given by the shorthand reporter as to the correctness of his transcript, and as to what was said in the preliminary examination by the witness, was given without objection or exception on the part of defendant, and we are therefore unable to consider any question as to the admissibility of such testimony.

3. It is urged that the deposition of Saito was not admissible under any circumstances, in so far as the testimony contained therein was taken through an interpreter in a foreign language. It appears that a portion of the testimony of the witness on cross-examination was given through an interpreter.

No such objection was made on the trial. If made, however, we are satisfied that it would not have been a good objection.

Whether taken from the witness through an interpreter or directly from the mouth of the witness, the *deposition* of the witness taken at the preliminary examination in the manner and form required by section 869 of the Penal Code, when properly certified, may be read in evidence in the cases mentioned in section 686 of the Penal Code. The statute so expressly

provides. It is the deposition taken and certified as provided in section 869 that is declared to be admissible by section 686. (*People* v. *Morine,* 54 Cal. 575, 577.) Under the provisions of section 869, the transcript in longhand of the shorthand notes of the testimony and proceedings, made and certified by the shorthand reporter appointed by the magistrate to take down the same, and who did take down the same, filed with the county clerk, is placed upon the footing of a deposition. (*People* v. *Grundell,* 75 Cal. 301; *People* v. *Buckley, ante,* p. 375), the certificate of the reporter giving it the same authentication as does the subscription by the witness and the certificate of the magistrate, when the deposition is originally taken in longhand under other subdivisions of the same section. (*People* v. *Ward,* 105 Cal. 652.) It occupies the same position as does the deposition taken originally in longhand and subscribed by the witness. Whether taken through an interpreter or not, it is in each case the original testimony of the witness, in the same sense and to the same extent as is the testimony of the witness present at the trial, given through the medium of an interpreter, his original testimony on the trial, and in the cases provided by law may be read in evidence as such. It will readily be seen that if this is not true it would be impossible to take a deposition of a witness unable to speak the English language that would be effectual for any purpose, and that every objection based on the fact that the testimony was given on the preliminary examination through the medium of an interpreter would be equally applicable to all testimony given on a trial through an interpreter.

The cases cited by counsel in support of his contention are not in point. In this case, as we have seen, it was the original testimony of the witness, his deposition, that was read in evidence. In the cases relied on (*People* v. *Lee Fat,* 54 Cal. 527; *People* v. *Ah Yute,* 56 Cal. 110; *People* v. *Lee Ah Yute,* 60 Cal. 96, and *People* v. *Jan John,* 137 Cal. 220) the question on the trial was as to what the defendant had testified to on a previous occasion, the object in one case being to sustain a charge of perjury, and in the others to show previous incon-sistent statements for the purposes of impeachment. It was held in those cases that only one who heard and understood the statements on the previous occasions, could testify as to the statements then made, and that to allow one who derived

his information as to what those statements were solely from
the mouth of another would be to allow the giving of hearsay
testimony.  It is unnecessary to discuss the rulings in those
cases.  The distinction between them and that of the use on
the trial of a deposition taken at the preliminary examination
in the manner provided by law is clear.

4. It is contended that the court erred in allowing the short-
hand reporter at the preliminary examination to testify as a
witness on the trial as to matters occurring during the ex-
amination of the absent witness, Saito, concerning which the
deposition was silent.

It appears that the deposition showed that Saito, after tes-
tifying that three men attacked him, two of them pointing their
pistols at him, was asked to state whether he saw two of the
men in court, and according to the deposition the answer was,
"There is one, that fellow (pointing)."  The deposition being
silent as to whom the witness indicated by pointing, the short-
hand reporter was allowed to testify that the witness then
pointed to the defendant.

There is certainly much force in the contention that the
statutory deposition cannot be thus added to by the testimony
of witnesses (see in this connection *People* v. *Gardner,* 98 Cal.
127; *People* v. *Ward,* 105 Cal. 652), but the objection is not
available in this case for two reasons.  The record shows that
the reporter gave his testimony upon this subject without ob-
jection on the part of the defendant, and no motion was made
to strike out the answer.  The evidence was given in response
to a question by the court, re-enforced by a question of de-
fendant's counsel.  The only exception noted is one to a state-
ment of the court, to the effect that a certain statement of the
prosecuting attorney shown by the deposition and objected to
by defendant would be excluded, and that the jury would
consider the testimony of the reporter just given with the
deposition then being read.  That testimony being in without
objection or exception, and without motion to strike out, there
was of course no error in stating that it should be considered.

Again, Saito in his deposition stated in terms that the de-
fendant, Lewandowski, was the man who at the time of the
attack put his hand into his (Saito's) pocket and took his
property from him, thus sufficiently identifying defendant as
one of the parties who attacked him.

5. It is contended that the instruction as to reasonable doubt was misleading. The instruction, so far as is necessary to explain the point made, was as follows: "A reasonable doubt is that state of the case which, after the entire comparison and consideration of all the evidence in the cause, leaves the minds of the jurors," etc. The criticism is, "that a reasonable doubt obviously is not a 'state of the case,' but, on the other hand, is rather a condition of the mind." The term "case" used in the instruction was used by Chief Justice Shaw in his definition of reasonable doubt in the case of *Commonwealth* v. *Webster*, 5 Cush. 320,[1] and this instruction has been so often approved by this court that defendant's objection does not seem to call for further comment.

This disposes of all the points made by appellant in his brief for a reversal of the judgment and order.

The judgment and order are affirmed.

Shaw, J., and Van Dyke, J., concurred.

Hearing in Bank denied.