[Crim. No. 214.   Second Appellate District.—November 6, 1911.]

## THE PEOPLE, Respondent, v. H. C. LEDERER, Appellant.

CRIMINAL LAW — FRAUDULENT TRANSFER AND CONCEALMENT OF PROPERTY—INTENT TO DEFRAUD CREDITOR—SUPPORT OF VERDICT.—Where the defendant was convicted of the crime of fraudulently conveying, assigning and concealing his property with intent to defraud a creditor named of a large sum of money, as prohibited in section 154 of the Penal Code, it is held that considering all of the facts and circumstances in evidence, it was very clearly established that the intent of the defendant was to dispose of his stock of jewelry, and leave his creditors without any means of satisfying his debts, and that the verdict of conviction was upon sufficient evidence.

ID.—JOINT NOTES—TRANSFER OF BUSINESS TO FATHER—LEGALITY NOT SHOWN—CONDUCT OF DEFENDANT AND CREDITOR—INSTRUCTIONS—REVIEW UPON APPEAL.—Where joint notes representing part of the debt were signed by defendant and his father, and defendant transferred the business to his father, without proof in the record of a

17 Cal. App.—24

legal transfer, and the debtor charged the notes to the father, yet, as the defendant continued thereafter to conduct the business as his own, and acknowledged the notes as his debt, and the creditor then looked to him for payment thereof, it is held that this court cannot review any error in the instruction based upon such transfer to the father.

ID.—ABSENCE FROM STATE OF SUBPOENAED WITNESS—DEPOSITION AT PRELIMINARY EXAMINATION—DISCRETION—REVIEW UPON APPEAL.— Where a witness was subpoenaed to appear at a date fixed for trial, and the trial was continued, and the witness announced his intention to leave the state, and he was last heard from in another state, and did not afterward appear in the county of the venue, the trial court might conclude from the facts that such witness could not with due diligence be produced at the trial, and admit in evidence his deposition taken at the preliminary examination of the defendant. The trial judge had discretion in determining whether a sufficient foundation had been laid for admitting such deposition in evidence, and where there is any evidence to support his conclusion, his ruling cannot be disturbed upon appeal.

ID.—SALE OF JEWELRY AT AUCTION—TESTIMONY OF AUCTIONEER—REFRESHING RECOLLECTION—DATE OF CHECK TO TRAVELING SALESMAN. Where the defendant sold most of the jewelry at auction, there was no prejudicial error in allowing the auctioneer to refresh his recollection as to the date of sale by the date of a check given to a traveling salesman, while he was engaged in selling the stock of jewelry, which check was then dated ahead ten days, after a controversy between them. The jury could not have reasonably drawn any inference unfavorable to defendant from the occurrence testified to by the auctioneer, and the ruling allowing oral testimony as to the contents of the check, if erroneous, was without prejudice.

APPEAL from a judgment of the Superior Court of San Luis Obispo County, and from an order denying a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

L. A. Enos, and Carpenter & Gibbons, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

JAMES, J.—Defendant was convicted of fraudulently conveying, assigning and concealing his property with intent to defraud Nordman Brothers Company, which was then his

creditor in a large sum of money, as that crime is described in section 154 of the Penal Code. He was sentenced to pay a fine in the sum of $1,005, from which judgment and from an order made by the trial court denying his motion for a new trial he has appealed.

From the reporter's transcript of the testimony it appears that the defendant was in charge of a jewelry store in the city of San Luis Obispo for at least one and one-half years prior to the date of his arrest, and that he assumed to be the owner thereof, his name appearing upon signs placed about the place of business and upon a large safe which he kept in the store for the purposes of that business. The complaining creditor had furnished merchandise to the amount of more than $2,000 in value for the defendant's use. A short time prior to the date of defendant's arrest a representative of this creditor called upon defendant at his place of business and made known the state of his account with the complainant. This account was then in the form of a book charge in part, and in part was evidenced by two promissory notes signed by the defendant and one Charles F. Lederer, the father of defendant. When the representative of the creditor made the request upon defendant that he discharge at least a part of the indebtedness, defendant promised to do so within a short time, which promise, and several others of like intent, he utterly failed to keep. Shortly before his arrest, he employed an auctioneer to sell off the stock of jewelry, and sales were had during several days until the merchandise on hand was reduced to an amount which represented but a small part of the stock theretofore kept on hand. None of the money received from these sales did the defendant apply upon his indebtedness. Again a representative of the creditor called upon him and requested payment of the account, and again defendant promised that he would obtain some money. He told the creditor's agent at the time of the latter's last visit that he had made an arrangement with a bank to obtain money, and that if he would call later in the day he expected to have it ready for him. This agent discovered that defendant had made no arrangement with the bank to obtain any money. After this last conversation with this agent, defendant left his store and prepared

immediately to take the afternoon train for Los Angeles, telling an employee to say to the agent when he inquired for him that he (defendant) had gone to the country to obtain a thousand or fifteen hundred dollars, which he intended to pay over to the creditor. The defendant was arrested at the railway depot when about to take the train to leave San Luis Obispo. Considering all of the facts and circumstances shown in evidence, it was very clearly established that the intent of the defendant was to dispose of the jewelry stock and leave his creditor without any means of satisfying the debt. While it does appear that the charge account kept by Nordman Brothers Company was carried upon their books in the name of Charles F. Lederer, it is equally clear that the defendant was conducting the jewelry business at San Luis Obispo in his own name and for his own benefit, and that the creditor looked to him for payment of the account. Moreover, it appears, further, that the defendant at no time questioned the correctness of the account as to its amount or his own responsibility as to the payment thereof. An attempt was made on the part of the defense to show that in July, 1909, defendant and one Curtis transferred the jewelry business to Charles F. Lederer, father of defendant. Defendant testified that on a certain day in the month mentioned he executed a notice of intention to sell and a bill of sale. It appears that this notice of intention to sell was intended to be given to satisfy the requirements of section 3440 of the Civil Code, but we are left altogether in the dark as to what its contents were, for, while the record shows that it was read in evidence, it is not brought before this court in any way, and by stipulation entered into between counsel it constituted one of the exhibits which it was agreed should not be set out in the transcript. There is, therefore, no testimony shown from which we can properly infer that a notice of intention to sell the jewelry business was ever executed, or that the bill of sale which was said to have been made referred in any wise to the business then being engaged in by the defendant. For this reason, it is not proper for us to consider as to whether the court erred in giving any of the instructions which referred to the matter of the alleged sale of the jewelry stock and business in 1909 to Charles F.

Lederer. In addition to all of this, as we have before noted, it appeared without contradiction that the defendant, from July, 1909, down to the date of his arrest, had conducted the business in his own name, that he assumed to be the sole proprietor thereof, and that the complaining creditor looked to him for the payment of its debt.

It is argued that the trial court erred in admitting the reporter's record of the testimony of a witness named Lamphere, which was taken in due form at the preliminary examination of the charge against defendant. This witness was not present at the trial, and there was evidence before the court that he had not been seen in San Luis Obispo for several weeks prior to the date of the trial, and that he had theretofore announced it as his intention to leave the state and go to the Philippine Islands. An acquaintance of his who was sworn as a witness produced a letter to which was attached the name and initials of Lamphere, this letter appearing to have been posted from a town in the state of Ohio some days prior to its receipt. The handwriting appearing in the letter was not identified as being that of Lamphere, but the letter contained references to a business matter about which Lamphere had talked with the witness who received the missive, about three weeks prior thereto. Lamphere had been served with a subpoena early in April, 1911, to attend on May 16th at the trial. Before May 16th arrived, the district attorney and defendant agreed to continue the trial to May 31st, which continuance was ordered by the court. While it was not shown that Lamphere had notice of this continuance, it was testified to by another witness that he (Lamphere) had never reported at the courthouse in response to the subpoena, and the sheriff of San Luis Obispo county testified that after the commencement of the trial he had made a search for Lamphere at San Luis Obispo and had failed to find him. Under the circumstances we think that, while the handwriting in the letter was not identified as being that of Lamphere, still that document, in connection with the other testimony referring to his then absence from the city, afforded some ground upon which the trial court might properly base its conclusion that the witness could not, with due diligence, be produced at the

trial. Section 686 of the Penal Code provides that the testimony of a witness taken at a preliminary examination may be read at the trial "upon it being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found within the state." It has been held that under the provisions of this section the trial judge has discretion in determining whether or not a sufficient foundation has been laid entitling such testimony to be read in evidence, and that where there is any evidence to support the conclusion affecting that matter, the ruling cannot be disturbed on appeal. (*People* v. *Nelson,* 85 Cal. 421, [24 Pac. 1006]; *People* v. *Witty,* 138 Cal. 576, [72 Pac. 177]; *People* v. *Lewandowski,* 143 Cal. 574, [77 Pac. 467].)

The alleged error complained of arising upon the ruling of the court allowing the auctioneer employed by defendant to state his recollection as to the date appearing upon a check given by defendant to a traveling salesman, seems to us to have been without prejudicial effect upon the rights of the defendant. The auctioneer was allowed to testify, against objection made by defendant, that while he was engaged in selling the jewelry stock, defendant had some controversy with a traveling man, and that finally the controversy was adjusted, and that defendant had delivered to the traveling salesman a check which was, as the witness said, "dated ahead" about ten days. Apparently defendant was owing money to the employer of the traveling salesman, and he settled his debt by giving a check dated as the witness described. We do not understand how the jury could have reasonably drawn any inference from this occurrence unfavorable to defendant, and, therefore, the ruling of the court in allowing oral testimony of the contents of a written instrument, if erroneous, was without prejudice.

The instruction given by the trial judge as to the character of evidence which a promissory note furnishes of the debt which it represents appears to be properly subject to the criticism which counsel urge against it. Whether the instruction was erroneous or not seems immaterial in the face of the uncontradicted testimony going to show the existence of the debt itself. As we have before stated, not only was there ample proof of the amount of the debt which was

owing to the complaining creditor at and prior to the arrest of defendant, but there was the further testimony, which stood uncontradicted, that when a statement was presented to defendant showing the total amount of his indebtedness, he made no question as to the correctness of that statement, but promised and agreed that he would secure funds with which to satisfy it.

In our opinion, defendant was convicted upon sufficient evidence, and no errors were committed by the trial court such as to warrant an order of reversal.

The judgment and order are affirmed.

Allen, P. J., and Shaw, J., concurred.