[Crim. No. 1409. Second Appellate District, Division Two.—March 25, 1927.]

## THE PEOPLE, Respondent, v. HUGH FAY, Appellant.

[1] CRIMINAL LAW — ACCOMPLICE — EVIDENCE—CORROBORATION.—It is not required that the corroborative evidence offered to support the testimony of an accomplice be sufficient to establish guilt; it will suffice if it tends to connect the defendant with the commission of the crime, even though, if it stood alone, it would be entitled to but little weight.

[2] ID. — CONSPIRACY TO COMMIT GRAND LARCENY OF BONDS — ACCOMPLICE—CORROBORATION.—In this prosecution for conspiracy to commit grand larceny of certain bonds, the testimony of an accomplice was amply corroborated.

[3] ID.—SALE OF BONDS — CASHING OF CHECKS — EVIDENCE.—In such prosecution, the fact that the charge was framed to consist only of a conspiracy to take, and the actual taking, of the bonds, on a day stated, did not render it error to admit evidence of the subsequent sale of the bonds and the cashing of checks received therefor.

[4] ID.—ADMISSIONS—EVIDENCE.—In such prosecution, the testimony of attachés of the district attorney's office as to statements and admissions of defendant was properly received, where each of the witnesses testified that such statements and admissions were freely and voluntarily made without any threat, force, promise of immunity, or offer of reward; and where defendant testified to conduct on the part of the officers which he claimed was intimidating, but they all flatly contradicted him in this, the determination of the jury upon such conflicting evidence adversely to the defendant became conclusive.

[5] ID.—ABSENCE OF WITNESS — TESTIMONY GIVEN AT PRELIMINARY EXAMINATION — ADMISSION OF — DILIGENCE. — In such prosecution,

---

1. Competency and sufficiency of evidence to corroborate an accomplice, note, 98 Am. St. Rep. 165. See, also, 8 Cal. Jur. 178; 1 R. C. L. 171.

4. Confessions, when admissible though made in presence of persons in authority, notes, 57 Am. Rep. 839; 18 L. R. A. (N. S.) 843; 50 L. R. A. (N. S.) 1088. See, also, 8 Cal. Jur. 111, 115; 1 R. C. L. 565.

5. Admissibility of former testimony of absent witness, notes, 1 Ann. Cas. 471; 13 Ann. Cas. 973; Ann. Cas. 1913C, 440, 464; Ann.

a sufficient showing of diligence to locate an absent witness was made as to permit the introduction of such witness' testimony given at the preliminary examination.

[6] ID.—SECTION 686, PENAL CODE—MEANING OF TERM "DILIGENCE."— The term "diligence" as intended by section 686 of the Penal Code is a relative one, and its application to each particular case depends upon the facts therein presented.

[7] ID. — EXERCISE OF DILIGENCE — QUESTION FOR TRIAL COURT — APPEAL.—The question as to whether or not due diligence as meant by section 686 of the Penal Code has been exercised is one for the determination of the trial court, and when there decided, its ruling will not be disturbed on appeal if there is any evidence of a substantial character to support it.

[8] ID.—CONVERSATIONS BETWEEN DEFENDANT AND COMPLAINING WITNESS—ADMISSIBILITY OF.—In such prosecution, it was not error to admit evidence as to conversations alleged to have occurred between defendant and the complaining witness before the bonds were secured from the latter, where at the time when such evidence was received the defendant was charged with grand larceny, and with embezzlement, in addition to the crime of conspiracy to commit grand larceny, and such evidence was admissible under some of the charges for which the defendant was on trial.

[9] ID.—ACCUSATORY STATEMENT—SILENCE OF DEFENDANT—EVIDENCE. In such prosecution, testimony as to defendant's silence when an accusatory statement by a co-conspirator was read in defendant's presence was admissible, where defendant was not only fairly accorded an opportunity to reply, but his failure to do so must be regarded as evidence strongly tending to indicate an admission of guilt.

---

(1) 16 C. J., p. 711, n. 21, 24.    (2) 16 C. J., p. 712, n. 30.    (3) 16 C. J., p. 662, n. 63.    (4) 16 C. J., p. 629, n. 23; 17 C. J., p. 264, n. 89.    (5) 16 C. J., p. 758, n. 57.    (7) 17 C. J., p. 242, n. 48. (8) 16 C. J., p. 669, n. 46.    (9) 16 C. J., p. 631, n. 67.

Cas. 1917A, 658. Sufficiency of showing as to circumstances justifying admission of testimony at preliminary examination of witness not available at time of trial, note, 25 L. R. A. (N. S.) 880. See, also, 8 Cal. Jur. 131; 8 R. C. L. 214. Use in criminal case of testimony given on preliminary examination by witness not available at trial, notes, 15 A. L. R. 495; 21 A. L. R. 662; 46 A. L. R. 463.

6. See 8 Cal. Jur. 130.

7. See 8 Cal. Jur. 129.

9. Uncontradicted statements in presence of accused as confession, note, 25 L. R. A. 558. See, also, 8 Cal. Jur. 103; 1 R. C. L. 478; 8 R. C. L. 192.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Arthur Keetch, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. C. Spicer and Lyle Pendegast for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and James S. Howie for Respondent.

CRAIG, J.—The three defendants above named were charged by information in three counts with the crimes of grand larceny, conspiracy to commit grand larceny, and embezzlement, respectively. King and Fay only were tried at the time of the proceedings here presented for review. At the conclusion of the trial, and before the jury retired, the district attorney dismissed the charges of grand larceny and embezzlement. Thereafter the jury returned separate verdicts, acquitting King, and convicting Fay of conspiracy to commit grand larceny. The latter appeals from the judgment and an order denying his motion for a new trial.

It appears that in January of 1926 Mrs. Cassie L. Bush was the owner of $4,700 worth of seven per cent gold bonds of the Witmore Hotel Company, consisting of four bonds of the face value of $1,000 each, one of $500 and two of $100 each. Appellant admits, and the record supports the fact, "that Mrs. Bush suffered larceny of the bonds is clear."

The defendant Murphy testified for the People, in minute detail, as to conversations which he swore occurred between himself and his co-defendants and two other men named Mott and Goss, and as to their movements before, during and after the bonds were fraudulently obtained from Mrs. Bush. In brief, he recited facts concerning the inception, progress, and consummation of a conspiracy between himself and the four last-mentioned persons to feloniously get possession of the securities, dispose of them and divide the proceeds. The testimony of this witness was, substantially, that he had known Goss for about ten years, that Mott introduced him to King at San Diego in November or December, 1925, and that he became acquainted with Fay at Long Beach late in January, 1926; that he met Fay, King and Goss

at Long Beach on February 3, 1926, at which time and place these four parties agreed that the witness should call upon Mrs. Bush on the following morning and state to her that the Witmore Hotel Company bonds were called in, and that he had been authorized to take them up. He further testified that his companions stated that they could not perform this part of the transaction because each had previously interviewed the lady, and believed that she would not have further dealings with them. Murphy swore that they all agreed to, and did, meet at Los Angeles on the next day; that King furnished him with blanks upon which he was instructed to receipt to Mrs. Bush for the bonds in the name of "A. P. Bourk"; that they drove in Fay's automobile past Mrs. Bush's residence, which was pointed out to Murphy, and turned the corner, where the witness alighted and walked back to the house.

From this point Murphy's testimony strikingly coincides with that of Mrs. Bush as to the manner in which her bonds were demanded, received and receipted for. It thus appears that when Murphy called the prosecuting witness was in conversation with a neighbor; that he informed her of the purpose of his visit, whereupon she stated that her bonds were at the bank, and that she was not dressed to go into the city; that he remarked that he was "going down the street to see a party," and would return for her; that shortly thereafter Murphy did return with an automobile, conveyed Mrs. Bush to the bank, where she obtained the bonds, and both returned to her house; Murphy there received the Witmore bonds, receipted for them in the name of Bourk, and when Mrs. Bush inquired about a check he promised to pay for them on the following Saturday, which admittedly he did not do.

Mrs. Bush testified also that about ten days previously to Murphy's visit Fay had called upon her, ostensibly for the purpose of interesting her in stock of the American Magnesium Company, and that he was accompanied by a man whom he introduced as Ward; that a day or two thereafter Fay again called with another man whose name was not revealed; that upon each of these occasions she declined to consider Magnesium Company stock, and that Fay during each such visit informed her that her Witmore Hotel Com-

pany gold bonds were to be called in at a premium, notwithstanding the fact that she had not mentioned, and did not know how he learned, that she had them. Mrs. Bush further testified that following each of their respective calls, as heretofore related, she did not see any of the parties until after they were arrested.

Murphy's testimony proceeded, in substance, as follows: That his purpose in going "down the street" while Mrs. Bush dressed was to get Fay's Cadillac car, and that Fay, Goss, and King waited for him until his return with the bonds. He swore that he showed the bonds to his three companions, and that ways and means of disposing of them were discussed; that they finally drove to the home of King's sister, where they divided the bonds, each taking one of the $1,000 issue, and that by "flipping a coin" they determined that King should also hold the $500 bond; that the witness, Goss, and Fay then returned to town, where Murphy entered Mott's car, which had been parked during the day, and drove to Long Beach. On the following morning, February 5th, according to Murphy, all four met again pursuant to prearrangement, and the witness and Goss were instructed by Fay and King to sell the bonds·through a Mr. Smith, at the stock and bond house of A. C. Wagy & Company, which they did, receiving checks which they attempted to cash, but being unable to do so, Mr. Smith, at the request of Goss and Murphy, had the checks so indorsed that the bank gave three cashier's checks in equal amounts therefor; the two last-mentioned conspirators returned to the machine, explained to Fay and King what had occurred, and thereupon Murphy, King, Fay, and Goss drove to Long Beach, where unsuccessful attempts at three different banks were made to open accounts from which they might draw funds. Murphy averred that finally he, Mott, and Goss departed for San Diego, where a bank account was opened, from which the witness received $900, and other moneys were divided, including $500 which Mott agreed to deliver to Fay and King at Los Angeles. Whether or not the latter received their share, the witness testified that he did not know.

The principal ground assigned for reversal here is that Murphy was a co-conspirator, and therefore an accomplice, and that he was not corroborated in any way in his statements as to appellant Fay's connection with the crime.

The manner in which appellant learned that Mrs. Bush owned Witmore Hotel bonds is not revealed by the record, but it is significant that, as we have shown, Murphy did not appear upon the scene until after Fay had twice visited her and had stated that they were to be called in, which later proved to be untrue. In addition to this concert of action, appellant when arrested was confronted by the other defendants, and a written statement which had been given by Murphy was read to them at the district attorney's office. Murphy was asked if such statement contained a true recital of the facts, to which he replied that it did. A deputy sheriff, who was corroborated by others, testified that he then asked the others if they had anything to say; that if they did, it was the time to say it, but that Fay "never said a word." The People's witness Pirrotte, another officer, testified that subsequently to Fay's arrest the latter voluntarily remarked that he had gotten into bad company, and asked the witness' help; that when asked "How bad are you in?" Fay replied, "Well, we got the bonds. We divided them up and the next morning we gave them all back to one man to sell, and King and I never got a cent out of it."

At the trial Fay stoutly denied that he knew anything about Mrs. Bush's bonds, or that he knew Murphy; one of the officers testified that appellant admitted having been at Long Beach with Goss and King, but stated that they went there in connection with certain oil leases which he later confessed that he knew nothing about; it appears that appellant also denied that he was acquainted with King, whose sister testified that she knew Fay, Goss, and Mott, and that they, with King, were at her residence on the night of February 4th. Murphy's testimony as to occurrences was further corroborated by People's witnesses Lamont of the California Bank at Los Angeles, Neal of the Bank of Italy at San Diego, Smith of A. C. Wagy & Company and Symonds of the Hellman Commercial Trust & Savings Bank at Los Angeles. Further, in addition to the corroboration of Murphy and the conflicting statements of appellant, his own testimony was contradicted in many respects before the jury.

[1] As was recently held by this court, it is not required that the corroborative evidence offered to support the testimony of an accomplice be sufficient to establish guilt; it will

suffice if it tends to connect the defendant with the commission of the crime, even though, if it stood alone, it would be entitled to but little weight. (*People* v. *Wilson*, 76 Cal. App. 688 [245 Pac. 781].) [2] We think, however, that the testimony of the defendant Murphy in the instant case was amply corroborated, and that the extensive citation of authorities upon this point is unnecessary.

[3] The count of the information upon which appellant was convicted charged that the defendants "did wilfully, unlawfully, fraudulently, corruptly and feloniously conspire, combine, confederate and agree together to take, steal and carry away property of one Cassie L. Bush," and that thereafter the said defendants "did wilfully, unlawfully and feloniously, and in furtherance of the conspiracy aforesaid, steal, take and carry away from the said Cassie L. Bush" the bonds in question. Appellant contends that the charge having been framed to consist only of a conspiracy to take, and the actual taking, of the property, on a day stated, it was error to admit evidence of the subsequent sale of the bonds and the cashing of the checks. Authorities are cited which might be construed as holding that the prosecution did more than was absolutely requisite, but none of them hold that such evidence was inadmissible. A contrary view was expressed in *People* v. *Dean*, 66 Cal. App. 602 [226 Pac. 943], wherein it was said: "It would seem to us that the conspiracy was not ended until the spoils had been divided, and if this be the rule, the testimony was properly admitted. But, however that may be, the outstanding fact upon this appeal is that the judgment in this case has done substantial justice. The record leaves no reasonable doubt of the defendant's guilt, quite apart from any testimony to which any objection is made." While conversations occurring after the termination of a conspiracy are inadmissible, it was definitely held by the supreme court in *People* v. *Trim*, 37 Cal. 274, that in a prosecution for conspiracy to commit arson evidence of endeavors following the fire to collect the amount of the loss insured against was competent and properly received.

[4] It is next insisted that the trial court erred in admitting the testimony of five attachés of the district attorney's office as to statements and admissions of appellant, in that they were not of the free and voluntary character re-

quired by the rule in such cases. Each of the witnesses in question testified that such statements and admissions were freely and voluntarily made, without any threat, force, promise of immunity, or offer of reward, and a careful perusal of the record convinces us that the evidence was properly admitted. Fay testified to conduct on the part of the officers which he claimed was intimidating, but they all flatly contradicted him in this, and the jury having determined the question adversely to the defendant, upon conflicting evidence, it became conclusive. (*People* v. *Oliveria,* 127 Cal. 376 [59 Pac. 772] ; *People* v. *Saenz,* 50 Cal. App. 382 [195 Pac. 442].)

[5] People's witness, Ruth Conde, a sister of the defendant King, testified at the preliminary examination, but was not present at the trial, and the district attorney offered her former testimony upon the ground that she could not be located. Counsel for appellant objected to the introduction of such evidence, contending that due diligence as required by section 686 of the Penal Code had not been exercised by the People in an effort to locate the witness within the state. Thereupon other witnesses were sworn, who testified to the following facts, which are not disputed: A subpoena was issued and a search was commenced for the witness about three weeks before the date of the trial; inquiries were made in the neighborhood of the residence where service was made prior to the preliminary examination, and at the place of business of the witness' husband; both the house and the store were found to be vacant, and each bore a "for rent" sign; investigators were informed by the landlord and by the neighbors that the Condes had departed without leaving any forwarding address or information as to their destination; that Conde was "one of the worst kind of bootleggers," and that "no one in the neighborhood knows where they went"; an officer later returned to the house, and he testified that it was then occupied by strangers; he inquired of the defendant King, and of appellant's counsel, each of whom stated that he did not know where the witness might be located, and endeavors to trace her through the records at the postoffice were unavailing. At the time of the trial further investigation was made at the instance of the court, but without success.

[6] It is well settled in this state that the term "diligence" as intended by section 686 of the Penal Code is a relative one, and its application to each particular case depends upon the facts therein presented. (*People* v. *Ramos,* 52 Cal. App. 491 [199 Pac. 544]; *People* v. *Boyd,* 16 Cal. App. 130 [116 Pac. 323]; *People* v. *Johnson,* 13 Cal. App. 776 [110 Pac. 965].) [7] The question as to whether or not due diligence has been exercised is one for the determination of the trial court, and when there decided its ruling will not be disturbed upon appeal if there is any evidence of a substantial character to support it. (*People* v. *Lederer,* 17 Cal. App. 369 [119 Pac. 949]; *People* v. *Lewandowski,* 143 Cal. 574 [77 Pac. 567]; *People* v. *Wilson,* 26 Cal. App. 336 [146 Pac. 1048]; *People* v. *Padilla,* 81 Cal. App. 528 [254 Pac. 585].)

There is no fact contained in the record which would suggest that the witness might have gone to any particular locality in the state. The nature of Conde's occupation and the manner in which he and his wife suddenly disappeared shortly before the trial might suggest that the witness was evading the service of process. Nothing known concerning them would give the slightest clue either to the direction in which they may have gone or the type of community in which they might take up their abode. Under such circumstances to have extended the search beyond the territory in which it was conducted would have been purely a hit-and-miss investigation, and to demand that such a search be made would be to require a search in every county and community of the state. From the facts presented we do not think the district attorney can be said to have been remiss in failing to take earlier steps to have her served. As was said in *People* v. *Melandrez,* 4 Cal. App. 396, 399 [88 Pac. 372]:

"The record discloses evidence showing that a considerable search had been made for the witness in and about the places that he had formerly frequented and that the officers had been unable to find him. We cannot say as a matter of law that this evidence was insufficient to reasonably satisfy the trial court that the witness could not be found in the state; and for this reason we cannot agree with appellant's contention that the deposition should have been excluded."

In *People* v. *Boyd, supra,* circumstances quite similar to those of the instant case were presented. It was there said:

"Counsel for appellant seem to think that, in order to disclose the 'due diligence' contemplated by the statute and necessary to be shown before the deposition of an absent witness taken at the preliminary hearing may be read in evidence at the trial, it must appear that a subpoena for such witness has been sent to every county in the state. In this they are mistaken.

"As is said in *Heintz* v. *Cooper,* 104 Cal. 670 [38 Pac. 512], 'diligence is a relative term incapable of exact definition. What would amount to due diligence under one state of facts would fall absolutely short of it under another and different state of facts. It depends, therefore, so essentially upon the particular circumstances of each case, with all their distinct and varying phrases and bearings, as they have appeared to the lower court at the trial and throughout the conduct of the cause, in determining whether diligence has been used in any particular instance, that this court should hesitate to disturb a ruling upon this ground where it has any substance whatever upon which to rest. The presumption is that the discretion has been properly exercised, and that presumption must be overcome by a clear want of facts before the order will be disturbed.' "

[8] Appellant further asserts that it was error to admit evidence as to conversations alleged to have occurred between himself and Mrs. Bush during the month of January, because they occurred, if at all, prior to the formation of the conspiracy as alleged in the information and testified to by Murphy. At the time when such evidence was received the defendants were charged with grand larceny, and with embezzlement, in addition to the crime of conspiracy to commit grand larceny. It was the theory of the prosecution that Fay personally laid the foundation for the commission of the offense, and thereafter delegated others to obtain the securities and the proceeds of their sale. Since the evidence complained of was therefore admissible under some of the charges for which appellant was on trial, it was not error to admit it. We are not prepared to hold, however, that the conspiracy between appellant and some of his co-defendants had not actually been formed at the time he visited Mrs. Bush. There is no merit in this contention.

[9] The only remaining point presented consists of the argument that, when the accusatory statement heretofore mentioned was read in appellant's presence, the defendants King and Murphy also being present, at the district attorney's office, appellant's silence did not constitute evidence of guilt, and that the circumstances were not such as reasonably to call for a reply. It appears that appellant had previously requested an opportunity to make a statement to the assistant district attorney, and that when there questioned he made various conflicting remarks. He was not coerced, but was given time to deny or affirm Murphy's version of the transaction, and was asked if he desired to make any statement about it, but he stood mute. The district attorney requested that before offering the statement and proof of appellant's silence the jury be instructed to disregard its substance; that the People offered merely "their silence or their act or conduct in relation to it as evidence." The jury were so instructed, and were again fully advised as to the law in such cases, in the general instructions. Under these conditions appellant was not only fairly afforded an opportunity to reply, but his failure to do so must be regarded as evidence strongly tending to indicate an admission of guilt. Under such circumstances the testimony was clearly admissible to establish that fact as is indicated by innumerable authorities, among which are: *People* v. *Amaya,* 134 Cal. 531 [66 Pac. 794]; *People* v. *Byrne,* 160 Cal. 217 [116 Pac. 521]; *People* v. *Ong Mon Foo,* 182 Cal. 697 [189 Pac. 690]; *People* v. *Bringhurst,* 192 Cal. 748 [221 Pac. 897]; *People* v. *Hendricks,* 71 Cal. App. 730 [236 Pac. 214].

The judgment and order appealed from are affirmed.

Works, P. J., and Thompson, J., concurred.