[Crim. No. 245. Fourth Appellate District.—May 18, 1933.]

THE PEOPLE, Respondent, v. JOHN J. NOONE, Appellant.

E. L. Johnson and Thomas P. Mackey for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

CAMPBELL, J., *pro tem.*—The defendant was charged by an information filed by the district attorney of San Diego County with having committed the offense denounced by section 288a of the Penal Code. Upon being arraigned he entered a plea of not guilty and was tried before a jury, which returned a verdict of conviction. He thereupon presented a motion for new trial and at the same time made application for probation. His motion for a new trial was denied and the application for probation was granted upon conditions that were stated in the order of probation. From the order fixing the terms of probation and from

the order of the court denying his motion for new trial the defendant prosecutes this appeal.

■ It may be observed at the outset that the defendant's appeal from the order granting his application for probation and imposing certain conditions in connection therewith is without merit. By making application for probation he waived pronouncement of judgment (*People* v. *De Voe,* 123 Cal. App. 233 [11 Pac. (2d) 26]). Section 1237 of the Penal Code permits an appeal by a defendant "from a final judgment of conviction; . . . from any order made after judgment, affecting the substantial rights of the party". Since it appears that no "final judgment of conviction" was rendered the order granting probation and imposing conditions in connection therewith was not an order made after judgment and an appeal from it does not lie (*People* v. *Patello,* 125 Cal. App. 480 [13 Pac. (2d) 1068]). ■ His appeal from the court's order denying his motion for a new trial is, however, entitled to consideration since section 1237 of the Penal Code specifically permits an appeal from such an order. In connection with the appeal therefrom it is contended that the court erred in refusing a new trial because the evidence submitted was insufficient to support the verdict and for the further reason that certain evidence was improperly admitted.

■ It appears from the record that the defendant and one William Buice, a private in the United States Marine Corps, were arrested on October 23, 1932, at a hotel in San Diego, California, by two naval intelligence officers, Benjamin Whitehead and J. E. Hansen. They were taken to the local police station where Buice made a written statement accusing defendant of the charge in the information. The defendant was arraigned in the Superior Court of San Diego County and entered a plea of not guilty. On motion of the district attorney the case was set for trial on November 10, 1932. The case appeared on the calendar on November 3d, 9th, 17th, 18th and 25th, and was finally reached for trial on November 29, 1932. The prosecution did not produce the witness Buice at the trial. The transcript of Buice's testimony taken at the preliminary examination was admitted in evidence over the objection of the defendant. The court ruled that the People had shown due diligence in attempting to locate Buice within

the county of San Diego after an adjournment of the trial from November 30 to December 5, 1932, was granted, to allow the prosecution further opportunity to make a search for the missing witness.

Section 686 of the Penal Code provides in part:

"3. *To produce witnesses on his behalf and to be confronted with the witnesses against him,* in the presence of the court, except that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness; or where the testimony of a witness on the part of the people, who is unable to give security for his appearance, has been taken conditionally in the like manner in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, the deposition of such witness may be read, upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found within the state; and except also that in the case of offenses hereafter committed the testimony on behalf of the people or the defendant of a witness deceased, insane, out of jurisdiction, or who cannot, with due diligence, be found within the state, given on a former trial of the action in the presence of the defendant who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness, may be admitted."

A deputy sheriff testified that on November 28, 1932, one day before the trial commenced, he received a subpoena for William Buice; that he went to the marine base to serve the subpoena and found that Buice had been dishonorably discharged from the United States Marine Corps on November 14, 1932, and had left a forwarding address of "Saxon, South Carolina"; that he searched the city and county directories, the registration lists and the telephone directories of all the towns and villages in San Diego County, but could find no one listed by the name of the witness Buice; that during the court recess he again went to the marine base and interviewed the captain and sergeant of Buice's company, who in turn made inquiry

of the men in the company; that only three men in the company knew Buice. The deputy sheriff learned that when Buice had been discharged he was led to the gate and told to leave the grounds.

Whitehead, one of the naval intelligence officers, testified that the first time he learned that Buice had been discharged from the navy was on November 29th; that during the four days' court recess he drove around the streets of San Diego looking for Buice, but without finding him.

An assistant district attorney testified that he had been assigned to the trial of this case on November 28, 1932, at which time he learned for the first time that Buice could not be located. He then sent a telegram to the sheriff at Saxon, South Carolina, inquiring as to Buice, and received no reply.

Hansen testified that he was a naval intelligence officer; that on October 25, 1932, the day after defendant's arrest, he went to the marine general and had Buice transferred from the "SS. Henderson" to the marine base, as "he would be wanted to appear in court"; that Buice was kept as a prisoner at large at the marine base until November 14th, when he was dishonorably discharged; that he (Hansen) was in court on November 9th or 10th when this case was set for November 17th; that on November 28th, the day before the trial commenced, he went to the marine base and inquired of the warden of the brig as to Buice; that he then learned for the first time that Buice had been dishonorably discharged on November 14, 1932; that he had searched around San Diego County and failed to locate him, and found no one who knew of or who had seen Buice; that at the time of the arrest Buice was attached to the "SS. Henderson," and Hansen requested that Buice be transferred to the marine base to be used as a witness; that the "Henderson" had just arrived from the East coast and this was the first time that Buice had ever been in San Diego. This witness was not permitted to answer a question as to whether or not he had at any time prior to November 28th attempted to procure the presence of the witness Buice.

Under subdivision 3 of section 686 of the Penal Code, the burden rested upon the People to show that the missing witness was either dead or out of the state, or that with

due diligence he could not be located within the state. The defendant had the right to insist upon a strict compliance with this statutory provision before such evidence as is here under attack could be used as evidence against him at his trial (*People* v. *Hayes,* 72 Cal. App. 292 [237 Pac. 390, 395]; *People* v. *Lewandowski,* 143 Cal. 574 [77 Pac. 467, 468]; *People* v. *Plyler,* 126 Cal. 379 [58 Pac. 904]). In *People* v. *Lewandowski, supra,* the Supreme Court, in discussing a similar situation, says:

"The trial court should be fully satisfied by the evidence that the absent witness cannot with due diligence be found in the state before allowing the deposition of such witness, taken on the preliminary examination, to be read."

In *People* v. *Hayes, supra,* the Appellate Court says:

"The right of the defendant in a criminal case to be confronted with the witnesses against him, while not guaranteed in this state by the Constitution, as it is in some of the constitutions of the sister commonwealths, but secured only by statutory provisions, is one of great value. 'The right . . . is deemed a most substantial one.' " (*People* v. *Plyler, supra; People* v. *Fish,* 125 N. Y. 136, at p. 150 [26 N. E. 319]; *State* v. *Wing,* 66 Ohio St. 407 [64 N. E. 514].)

The question of "due diligence" contains three fundamental elements, to wit: (1) It is addressed to the discretion of the trial court; (2) the trial court's determination will not be disturbed on appeal unless it is clearly shown that there was an abuse of discretion; and (3) each case must be determined upon its own facts.

It must be conceded that the record shows that no attempt was made to subpoena the absent witness until the day before the trial of the case was commenced in the superior court. The failure of respondent to have procured the issuance of a subpoena at an earlier date, bearing in mind that the case was set for trial on November 10, 1932, a date on which the witness was admittedly confined as a prisoner at the marine base in the city of San Diego and could therefore have been served therewith, forms the basis for the principal claim of appellant that there was such failure of due diligence by respondent that the trial court abused its discretion in permitting the transcript of

his testimony given at the preliminary examination to be read in evidence.

At first blush, the contention of appellant in this regard appears to be well taken. As above noted, the case was set for trial November 10, 1932. The record shows that on November 3, 1932, appellant was arraigned in the superior court and that on motion of the district attorney the case was set for trial on November 10, 1932, and that due to the fact that the department of the superior court to which the case had been assigned for trial was occupied in the trial of other cases, the trial of the instant case was continued from time to time until it was finally reached on November 29, 1932. The record also shows that one of the naval intelligence officers who had made the arrest of appellant and of the witness Buice was present in court when the case was first set for trial on November 10, 1932. The record further shows, however, that after Buice was arrested on October 23, 1932, he was taken to the marine base and there placed in confinement and that, unknown to the naval intelligence officers or to the civil officers who were charged with the prosecution of the case, he was dishonorably discharged from United States Marine Corps on November 14, 1932, and released from the marine base. The question which then arises is whether, under these circumstances, it may be said that respondent was so obviously negligent in failing to take the necessary steps to insure the presence of the witness at the trial of the action that it must be declared there was a failure to exercise due diligence.

We entertain the opinion that it is at least open to serious doubt that it should be so declared. The witness had been placed under arrest at the same time that appellant was taken into custody and had been placed in confinement. It was therefore entirely reasonable for the officers who were charged with the duty of conducting the prosecution to assume that the witness would be immediately available at any time within a reasonable period after his arrest and confinement when his presence in court should be required. The record shows that the witness did appear and testify at the preliminary examination of appellant on October 27, 1932.

As was well said in *Heintz* v. *Cooper*, 104 Cal. 668, 670 [38 Pac. 511, 512]:

"Diligence is a relative term incapable of exact definition. What would amount to due diligence under one state of facts would fall absolutely short of it under another and different state of facts. It depends, therefore, so essentially upon the particular circumstances of each case, with all their distinct and varying phases and bearings, as they have appeared to the lower court at the trial and throughout the conduct of the cause, in determining whether diligence has been used in any particular instance, that this court should hesitate to disturb a ruling upon this ground where it has any substance whatever upon which to rest. The presumption is that the discretion has been properly exercised, and that presumption must be overcome by a clear want of facts before the order will be disturbed."

This language was quoted with the observation that it correctly stated the rule in *People* v. *Hewett,* 78 Cal. App. 426, 435 [248 Pac. 1021], where one of the principal contentions relied upon by the appellant for reversal of the judgment of conviction was that the trial court had abused its discretion in permitting the transcript of the testimony of the absent complainant given at the preliminary examination before the magistrate to be read in evidence. That the problem of determining whether a sufficient showing has been made to warrant the reception in evidence of the testimony of an absent witness given at the preliminary examination of the defendant in a criminal action before a committing magistrate is primarily one for the trial court, and that its solution of the problem will not be disturbed if there is any evidence of a substantial character to support its conclusion, is well established (*People* v. *Lederer,* 17 Cal. App. 369 [119 Pac. 949]; *People* v. *Wilson,* 26 Cal. App. 336 [146 Pac. 1048]; *People* v. *Brown,* 61 Cal. App. 748 [216 Pac. 58]; *People* v. *Padilla,* 81 Cal. App. 528 [254 Pac. 585]; *People* v. *Fay,* 82 Cal. App. 62 [255 Pac. 239]). We entertain the opinion that upon the facts presented by the record herein we cannot say there was such an obvious lack of diligence on the part of respondent in having failed sooner to have procured the issuance and service of a subpoena upon the witness Buice

that we must now declare that the trial court abused the very wide discretion vested in it in permitting the deposition of this witness given at the preliminary examination of appellant to be read in evidence at the trial.

Nor can we say that there was such lack of due diligence in endeavoring to locate the witness after it was discovered that he had been discharged from the United States Marine Corps and released from the marine base that we should declare that the trial court abused its discretion in permitting the transcript of the testimony to be read in evidence.

The record contains some evidence tending to show that the absent witness had departed from the state of California on November 14, 1932, and that he had given a forwarding address which was stated to be ''General Delivery, Saxon, South Carolina''.

This, we think, amply justified the trial court in holding that the respondent was not required to show that subpoenas requiring the attendance of the witness had been issued and sent to the sheriffs of counties in California other than the county of San Diego. In this connection, it should be borne in mind that the witness had arrived in San Diego for the first time only a few days prior to his arrest and that upon being discharged from the marine corps he gave the above-mentioned forwarding address. It was shown that a telegram addressed to the sheriff at this town inquiring as to the whereabouts of the missing witness was sent by the district attorney of San Diego County on November 30, 1932, and that no response to the telegram was received. It was further shown that search of the directories of the city of San Diego and of the county of San Diego was made and that effort to locate the missing witness was put forth by inquiry at the marine base in the city of San Diego and by observation of the downtown streets of said city for a number of days.

Objection is made that the trial court permitted the witness Whitehead to refresh his recollection by examination of a written statement which the witness testified was read by the accomplice Buice in the presence of appellant at the police station in the city of San Diego early in the morning of October 24, 1932. The document from which the witness was permitted to refresh his recollection con-

sisted of a statement made by the accomplice narrating what had taken place between appellant and the accomplice during the evening of October 23, 1932, prior to their arrest and reduced to writing. The document was offered in evidence by respondent but objection to its admission by appellant was sustained. The witness Whitehead was then asked to state what the accomplice had said in the presence of appellant. The witness related from memory a portion of the contents of the written statement which he testified was read in appellant's presence and inquiry was made of him if the testimony he had given was the substance of the accomplice's statement made at the time. The witness thereupon replied: "He might have said more." The court then permitted the witness, over appellant's objection, to refresh his recollection by an examination of the document. The witness enlarged upon his previous testimony and included a highly incriminatory statement which he testified was made by Buice, the accomplice, in appellant's presence.

The court was undoubtedly correct in sustaining appellant's objection to the admission of the document. It was pure hearsay and contained certain statements highly incriminatory and exceedingly prejudicial to appellant. The only excuse for placing before the jury a statement of the character above described is not that the statement itself is admissible but that the reaction of the accused thereto may properly be shown. It is at least open to serious question whether under the circumstances presented by the record the court should have permitted the witness to refresh his recollection by an examination of a document which did not at all conform to the provisions of section 2047 of the Code of Civil Procedure. Furthermore, the statement of the witness in attempting to relate from memory what the accomplice had read in appellant's presence that "He might have said more" can hardly be said to have established a sufficient foundation for permitting him to refresh his recollection. Nevertheless, if it be conceded that the court erred in permitting the witness to examine the document, which was clearly inadmissible in evidence, for the purpose of refreshing his recollection, it does not follow that the order refusing a new trial should be reversed. Another witness for respondent testified fully as

to what the accomplice had stated in appellant's presence without reference to the document and without finding it necessary to refresh his recollection, and further testified that appellant remained silent in the face of the accusation. Under the circumstances, therefore, we cannot say that appellant was prejudiced by the court's ruling to which exception has been taken or that a miscarriage of justice has resulted therefrom.

■ Complaint is made that the record contains insufficient corroboration of the testimony of the accomplice. No useful purpose would be subserved by indulging in a prolonged analysis of the evidence relied upon by respondent as furnishing sufficient corroboration of the accomplice's testimony. Suffice it to say that the circumstances which surrounded the arrest of appellant and the accomplice were such as to raise more than a mere suspicion of appellant's guilt and strongly tended to connect him with the commission of the offense.

■ Appellant's final contention is that the court erred in refusing to give to the jury an instruction offered by him relative to the necessity of an accomplice's testimony being sufficiently corroborated. The proffered instruction is in the following language: "You are instructed that corroborative evidence of an accomplice is not sufficient if it merely casts a grave suspicion upon the defendant, and where the circumstances proven, taken separately and collectively, are consistent with the innocence of the defendants, there is no corroboration, and, in such case, it is your duty to find a verdict of not guilty."

This instruction embodies language taken from 12 Cyc. 456, which the Supreme Court, in *People* v. *Robbins,* 171 Cal. 466, 470 [154 Pac. 317], quoted with approval as correctly stating the rule with respect to the corroboration of an accomplice. Concededly it might properly have been given. However, it does not follow that error was committed in its rejection. The jury was instructed that more is required by way of corroboration than mere suspicion and that, if there are two reasonable conclusions to be drawn from the evidence as a whole, one pointing to the guilt of appellant and one pointing to his innocence, it was the duty of the jury to accept that conclusion which pointed to his innocence. Examination of the instructions in their en-

tirety produces the conviction that the jury was fully and fairly advised by the court as to the legal principles to be applied in its consideration of the facts. We conclude that the refusal of the court to give the proffered instruction was not an error of law which required the court to grant appellant's motion for a new trial.

The orders of the court from which appellant has prosecuted this appeal are therefore affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 15, 1933.