[Crim. No. 1221.    Fourth Dist.    Mar. 20, 1957.]

THE PEOPLE Respondent, v. L. V. ROBINSON,
Appellant.

L. V. Robinson, in pro. per., and Howard Renge, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

MUSSELL, J.—Defendant was found guilty by a jury of a violation of section 464 of the Penal Code (burglary with explosives), as charged in count one of the information filed against him by the district attorney of Fresno County. He was also found guilty of violation of section 12353 of the Health and Safety Code (possession of an explosive, to wit, tetratol) and violation of section 12354 of the Health and Safety Code (wilfully and maliciously placing an explosive, to wit, tetratol, in a building of the Pacific Tent and Awning Company), which offenses are charged in counts four and five of said information. He was found not guilty of two other offenses charged in counts two and three of the information, to wit, wilfully and unlawfully entering a blasting powder storage bunker with intent to commit theft therein, and wilfully and unlawfully entering a storage bunker for explosive detonation caps with intent to commit theft therein. Three prior convictions charged were admitted by the defendant. His motion for a new trial was denied, he was sentenced to state's prison and appeals from the judgment of conviction and the order denying his motion for new trial.

At about 5:20 a. m., on May 17, 1956, police officers, who had information concerning a planned burglary, went to the building occupied by the Pacific Tent and Awning Company in Fresno. When they entered the building, they observed the defendant running through it. He was making a turn in the vicinity of a bench and dropped a piece of black cord on it. He was commanded to halt, which he did, and was taken into custody. He was asked "if he had anything set to go there" and replied, "No." His eyes were bloodshot but he did not appear to be under the influence of intoxicating liquor and was steady on his feet. The officers found a heavy duty electric cord with a male plug on the end of it lying on the bench near which the defendant had been observed and there was an electric light socket about 3 feet from the end of the cord. This cord led to wires which were connected to an electric blasting cap, which was taped onto a block of tetratol, which was in turn taped onto a safe. The rear of the safe appeared to have been beaten and pounded with a heavy object.

A large sledge hammer was lying on the floor at the back of the safe and a chisel was lying on a desk near the safe. An attempt had been made to use a chisel on the safe and the odor of tear gas was very strong close to it.

Gordon Gouldy, who informed the police officers of the planned burglary by defendant, testified for the prosecution at the preliminary examination but could not be found at the time of trial. His testimony at the preliminary examination was read into the record at the trial, over objection by the defendant, and he bases his appeal herein on the grounds that the prosecution failed to show that due diligence had been exercised in attempting to locate Gouldy; that his evidence was material to the issues and without which a conviction would have been doubtful; and that the trial court erred in admitting his testimony in evidence.

Gouldy's testimony was that on the night of May 16, 1956, one Cody introduced him to the defendant at Ted's Club, in Fresno. Defendant desired to be taken to Mira Monte and Gouldy agreed to drive him there. Defendant told Gouldy he had tried to break into a safe and had gotten tear gas in his eyes and wanted to be taken to Mira Monte to get some gear to get into the safe. Gouldy left Ted's Club and informed the sheriff's office of this conversation with the defendant and was instructed by them to go along with the defendant's plans. Gouldy then returned to Ted's Club and took the defendant with him to Mira Monte, where the defendant obtained a canvas bag and a carton, which he placed in the car. Upon their return to Fresno, Gouldy again contacted the sheriff's office, without the knowledge of the defendant, and informed them that he, Gouldy, and the defendant were going to the Pacific Tent and Awning Company in Fresno. When Gouldy and the defendant arrived there, the defendant removed explosives from the canvas bag and entered the building, while Gouldy remained in his car until the police arrived.

█ The rule applicable to the determination of whether the court abused its discretion in permitting the prosecution to read into evidence the testimony of Gouldy taken at the preliminary examination is stated in *People* v. *Cavazos*, 25 Cal. 2d 198, 200-201 [153 P.2d 177], as follows:

"The question of what constitutes due diligence to secure the presence of a witness which will authorize the reading to the jury of testimony taken at the preliminary hearing of the case, is largely within the discretion of the trial court,

and depends upon the facts of each particular case. The decision of a trial judge on the question of diligence and of the propriety of receiving or rejecting the evidence will not be disturbed on appeal unless it appears that there was an abuse of discretion. (*People* v. *Lewandowski*, 143 Cal. 574 [77 P. 467]; *People* v. *Harris*, 16 Cal.App.2d 701 [61 P.2d 348]; *People* v. *Noone*, 132 Cal.App. 89 [22 P.2d 284]; *People* v. *Fay*, 82 Cal.App. 62 [255 P. 239].) The problem is primarily for the trial court, and its solution will not be disturbed if there is evidence of substantial character to support its conclusion. (*People* v. *Noone, supra*; *People* v. *Hewitt*, 78 Cal.App. 426 [248 P. 1021]; *People* v. *Lederer*, 17 Cal.App. 369 [119 P. 949].)'' (See also *People* v. *Franquelin*, 109 Cal.App.2d 777, 781 [241 P.2d 651].)

In the instant case the record shows that on June 11, 1956, the trial was set for July 17, 1956. A subpoena was issued for Gouldy and delivered to a deputy sheriff for service on July 6th. Gouldy had lived in Fresno "off and on" for 39 years. He had been known to one of the officers for at least five years. He had worked with the police on previous occasions and had been found to be reliable. He had maintained a home at 333 Diana Street in Fresno and in May, 1956, had accepted a subpoena there to appear and testify at the preliminary hearing. The deputy sheriff who attempted to serve the subpoena on Gouldy for the trial first went to Gouldy's listed address and discovered that he had moved. He then went to the taverns Gouldy was known to frequent and discovered that he had left town. He was told various vague and conflicting stories as to Gouldy's destination, such as, "that he was going up around Grass Valley"; that he was "going up north"; and that he was "going up to the Fort Bragg area." The process server "had conversations with several police officers." He checked the post office, the gas company, the power company, the voters' register, and the tax rolls. He was unable, however, to discover a forwarding address or a mailing address where the witness might be reached, even though he continued his efforts up to and during the trial. The record shows substantial evidence to support the conclusion of the trial court that the officer exercised due diligence in attempting to serve the subpoena on Gouldy and no abuse of discretion appears.

Defendant contends that the testimony of Gouldy was essential to the prosecution's case. This contention is without merit. The testimony of the police officers as to

their findings at the scene of the crime and as to the conduct of defendant were ample to sustain the verdicts of the jury. Moreover, the jury apparently did not believe the testimony of Gouldy as it found the defendant not guilty of entering a blasting powder storage bunker with intent to commit theft and unlawfully entering a storage bunker of explosive detonation caps with intent to commit theft. The record also shows that Gouldy was extensively cross-examined at the preliminary hearing by defense counsel and it was shown that he had been previously convicted of a felony. After an examination of the entire case, including the evidence, we are of the opinion that it is not reasonably probable that a result more favorable to the defendant would have been obtained if the testimony of Gouldy had not been read into the evidence. Therefore, no miscarriage of justice resulted. (*People* v. *Watson,* 46 Cal.2d 818, 837 [299 P.2d 243].)

The judgment and order denying a new trial are affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1957. Schauer, J., was of the opinion that the petition should be granted.