## IRVIN KEARNS v. STATE.

No. A-2438.   Opinion Filed November 9, 1917.

(168 Pac. 242.)

1.   **INDICTMENT AND INFORMATION—Duplicity—Evidence.** An information charging murder which alleges that the means used in producing death was a slung-shot or other blunt instrument, the accurate description of which is unknown to the county attorney, and an axe, is not subject to demurrer on the ground that it is duplicitous, for the reason that both such instruments could be used in the perpetration of the crime. The proof in the record under review establishes the fact that such was the condition under which the homicide involved occurred.

2.   **EVIDENCE—Testimony of Absent Witness—Transcript.** The transcript of the testimony of a witness who testified at the examining trial is entitled to be admitted in evidence on behalf of the state when the witness who gave the testimony is dead, has voluntarily left the state, or is otherwise beyond the jurisdiction of the court, without the consent of the proper officer.

3.   **EVIDENCE—Confessions—Voluntary Character—Promise of Immunity.**  (a) A confession made by a person who is in custody is not admissible in evidence against him if it is induced by promises of immunity or other material advantage.

(b) A voluntary confession, however, is admissible, and is entitled to go to the jury for what it is worth.

4.   **TRIAL—Trial of Issue of Insanity—Denial of Application.**  (a) An application made to the court by motion to try the sanity

of the accused is properly denied when no doubt of his sanity is raised by the pleadings and the proof offered in support thereof.

(b) An examination of the record involving this proposition as it affects the case under consideration discloses the fact that counsel did not bring themselves within the doctrine laid down by this court in **Marshall v. Territory,** 2 Okla. Cr. 136, 101 Pac. 139.

5.  **TRIAL—Given Instructions—Requested Instructions.** When the instructions of the court fairly cover all the law applicable to the issues in the case, the judgment will not be reversed because the court refused to give specific instructions requested. This, of course, contemplates that all material issues shall be submitted to the jury in the general charge.

*Appeal from District Court, Blaine County;*
*Jas. R. Tolbert, Judge.*

Irvin Kearns was convicted of murder, and he appeals. Affirmed.

*Woolman & Wishard,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   Irvin Kearns was convicted at the September, 1914, term of the district court of Blaine county on a charge of murder, and his punishment fixed at imprisonment in the state penitentiary for life.   The information was filed on the 1st day of June, 1914, and charges the plaintiff in error with the murder of John Y. Leigh in Blaine county, in August, 1913, by striking him upon the head with a slung-shot, or other blunt instrument, and with an axe.   A demurrer was filed to the information and overruled by the court.

The first assignment of error argued in the brief is based upon the proposition that the court erred in overruling the demurrer.   Counsel contend that the information should have charged that the murder was committed with a slung-shot in one count and with an axe in another

count, or that the charge should have been made in the disjunctive in one count. With this contention we cannot agree. The proof clearly establishes the fact to our mind that the deceased was struck over the head with a slung-shot and rendered insensible, but not killed outright; that immediately thereafter he was struck upon the head with an axe and the skull crushed in. The death was caused by the use of the slung-shot and the axe. The information alleges that this was the manner in which death was produced, and the proof sustains the allegations. Counsel's contention would be founded in merit if only one of the means set forth in the information had been used, but in this case both were used and both were contributing causes to the death of the deceased. The demurrer was properly overruled.

The next assignment urged is based upon the proposition that the court improperly permitted the state to introduce the testimony of Dr. J. B. Leisure taken at the examining trial and preserved as provided by law. Upon the offer of this testimony the state introduced proof to establish the fact that Dr. Leisure had left the state and was in Chicago or New York at the time. From the showing made there can be no question but that Dr. Leisure was beyond the confines of Oklahoma at the time of the trial. The county attorney had caused a subpœna to be issued and served upon him. After the service of same he purchased a ticket for Chicago, told his associates in business that he was going to Chicago and New York and would not return for some weeks. Proof also established the fact that letters had been received from the witness mailed at Chicago some two or three days prior to the tender of his testimony. Under the statute, the testimony of this witness taken at the examining trial was entitled to

be admitted on behalf of the state. This court has uniformly so held.

The next assignment of error is based upon the proposition that the court erred in admitting, over the objection of the plaintiff in error, written and verbal confessions made by the plaintiff in error while he was under arrest and confined in the county jail. Certain written and oral statements detailing the facts and circumstances of the homicide were made to L. A. Akin, sheriff of the county, A. L. Bloss, county attorney, and the jailer of said county. In these written and oral statements the plaintiff in error told the officers that he and Jack Dunn killed John Y. Leigh by striking him over the head with a slung-shot, dragging him out to the lot and knocking him in the head with an axe. He detailed the physical surroundings, the location of the body, and many other things which substantiates his knowledge of the circumstances and connection with the murder. All of those things were investigated by the officers and found to be true.

In addition to those statements, Ex-Governor Ferguson visited the prisoner while he was in the county jail. Governor Ferguson, testifying to the facts detailed to him by the prisoner, said: "I asked him particularly about each of the details." He then follows with an account of what occurred in the conversation between him and the plaintiff in error substantiating the written confessions made to the officers. The substance of the same was that the plaintiff in error went to the home of Leigh upon the request of Jack Dunn; that a conversation ensued concerning some cattle, which it appears that Leigh had accused Dunn of stealing; that Dunn struck Leigh over the head with some instrument in the house; that plaintiff in error

heard the blow, but did not see it; that Dunn then dragged the body of Leigh out of the house and told the plaintiff in error to help carry him to the lot; that after getting him to the lot, Leigh began to move and Dunn picked up an axe and struck him upon the head with it; that he ran to where his mule was tied, got on him, and rode away rapidly. Other witnesses testified to having seen the plaintiff in error riding rapidly from the direction of Leigh's place to another neighbor's house.

The plaintiff in error testified in his own behalf and contradicted practically every fact testified to by the witnesses in the case, and even denied making any statement whatever to Governor Ferguson. The principal objection argued against the competency of the confessions is based upon the proposition that they were made at a time when the plaintiff in error had been promised leniency by the officers, and that they were, therefore, rendered inadmissible. A careful scrutiny of the entire record, which is voluminous, leads unerringly to the conclusion that the plaintiff in error made these confessions without the influence of any promise of immunity in connection with this homicide. He says that he was in jail on a misdemeanor charge at the time the first statements were made, and that he expected leniency on that charge. All of the officers testifying on behalf of the state say that they made no promise of immunity or leniency, the sheriff having testified that the only thing he said about the matter was that a plea of guilty or a confession would probably entitle the plaintiff in error to the leniency of the court; that this statement was made in connection with the misdemeanor transaction at a time when the officers were endeavoring to connect others with the homicide. The statement made to Ex-Governor Ferguson was not made, however, under

the promise of immunity, leniency, or any other induce-
ment whatever.  Ex-Goveror Ferguson says that the plain-
tiff in error did practically all of the talking; that he talked
about 30 minutes.  There is no doubt about the admissi-
bility of this confession, for it was not made under cir-
cumstances or conditions that would entitle it to the objec-
tion urged against the confession made to the public of-
ficers.  If the confessions obtained by the officers were
obtained under duress or promise of immunity or other
inducements in connection with the crime charged, they
would not be admissible in evidence.  As is stated, *supra,*
the officers testified that no promises were made nor induce-
ment offered.  Against this is the statement of the plain-
tiff in error only.  The trial court after hearing the mat-
ter at length concluded that the inhibitions of the law
against the admissions of confessions obtained by promises
of immunity or other inducements had not been encroached
upon, and that the statements were voluntarily made, and
therefore entitled to be introduced.

After a careful consideration of all the facts and
circumstances disclosed by the record in this connection,
we are unable to say that the trial court reached an erron-
eous conclusion in this respect, and even though the ad-
mission of the confession made to the officers was errone-
ously admitted, this judgment could not be reversed upon
that ground alone, in the absence of other prejudicial error
of law.  The confession made to Governor Ferguson hav-
ing been properly admitted, the error, if any, in admitting
the confessions obtained by the officers would become
harmless considering all the disclosures before us.

The only other proposition which we find it necessary
to consider is based upon the contention that the court
erred in refusing to order a jury to try the sanity of the

plaintiff in error after the rendition of the verdict of guilty. The motion filed by counsel and the supporting affidavit fail to raise an issue entitling them to try the question of sanity. The motion nowhere sets forth the fact that the plaintiff in error was insane at the time the same was filed or at any time during the trial. The affidavit of the father of the accused offered the evidence and proof of the facts and circumstances that had developed in the trial in support of the motion. The affidavit of the father of the accused contains no statement of facts in addition to those disclosed by the record. All matters, therefore, involving this proposition were before the trial court. By him the motion was denied. Counsel argue that under the doctrine announced by this court in *Marshall v. Territory*, 2 Okla. Cr. 136, 101 Pac. 139, the court erred in this connection. In the Marshall Case it is said:

"Under our law, if a doubt arises as to the sanity of the defendant, the court must order a jury, and if the facts presented to the court are such as to raise a doubt as to the sanity—that is, if there are statements under oath of a credible person, or persons, that the defendant is insane—a doubt is raised, because if the statements are true, the man is insane, and a jury must inquire into the facts as to the truthfulness of the alleged fact of insanity. It is to be observed that it is not a discretion on the part of the court, under our statute, to direct the calling of a jury. The only contingency is, does a doubt arise? This means, has information come to the court through a proper channel, from a proper source or party—that is, during trial—and from a credible and trustworthy source information is brought to the court that the defendant is insane, or if from personal inspection or observation of the court, such probable condition of the defendant is made known to the court, then the law requires that a jury should be impaneled, who shall inquire into the mental condition of the defendant. In this case there is small

doubt, if any, that if the facts  *  *  *  were presented to a jury, such jury would have found the defendant insane. To say the least, the testimony established that the defendant was not in such condition mentally as to be competent to make a rational defense."

The only question, therefore, is whether or not in the consideration of this motion a doubt as to the sanity of the accused was raised. The trial court determined this proposition adversely to the contention of the plaintiff in error, and in so doing, in our judgment, reached the correct conclusion. The facts and circumstances disclosed by the record do not tend to indicate that the accused was insane at the time. It rather indicates the contrary. The witness was intelligent. His testimony on cross-examination indicates that he was of vicious disposition and a dangerous criminal.

The proof in the record overwhelmingly establishes the murder of John Y. Leigh and the guilt of the accused —at least, as a participant in the crime. The disclosures in the cross-examination of the accused in his own behalf seal the correctness of the jury's verdict and the justness of the judgment of the court.

Some complaint is made of the court's refusal to give certain instructions requested by counsel for the plaintiff in error and of instructions given by the court. A careful examination of these disclose no prejudicial error upon the part of the court.

The judgment of conviction is in all things affirmed.

DOYLE, P. J., and MATSON, J., concur.