# HARRY SIPES v. STATE.

No. A-5762.  Opinion Filed Dec. 11, 1926.
(251 Pac. 511.)

Matson & Mathers, for plaintiff in error.

George F. Short, Atty. Gen., and Chas. Hill Johns, Asst. Atty. Gen., for the State.

DOYLE, J. An information was filed April 4, 1925, in the district court of Carter county, charging that in said county on or about the 6th day of July, 1924, Harry Sipes did—

"feloniously buy and receive from one Abbott Brady, for the consideration of $100, certain personal property, to wit, an automobile of the reasonable market value of $100, which said property 'Candy' Renfro and Raymond Garrett had previously stolen from the owner thereof, whose name is to this informant unknown, as he, the said Harry Sipes, at the time he bought and received said property, then and there well knew the same to be stolen property."

On April 15th a trial was had thereunder, the defendant was found guilty as charged, and his punishment assessed at imprisonment in the penitentiary for a term of four years.

In support of the contention of counsel for appellant that the judgment rendered on the verdict should be reversed, a number of errors are assigned and argued.

The following synopsis of the testimony will be sufficient to make clear the contentions made.

Homer (Candy) Renfro testified, in substance, as follows: That he had lived in Ardmore about 10 or 12

years; knew the defendant, also Abbott Brady and Raymond Garrett; that on or about June 16, 1924, witness and Raymond Garrett sold to Abbott Brady a Ford coupe; that he and Garrett had stolen the car in Dallas about two days before they sold it to Brady; that the car was practically new; that Brady paid them $200 for the car; that witness signed a bill of sale and gave it to Brady, which he identified. Against the defendant's objections, he further testified that they told Brady that it was a stolen car, and that they told him where they stole the car in Dallas; that he and Garrett had Brady paint the car for them.

Abbott Brady testified that he knew the defendant, also Renfro and Garrett; that on or about June 16, 1924, he bought a Ford coupé from Garrett and Renfro, and that they gave him a bill of sale, covering the car which he knew was executed under a fictitious name; that the defendant came in and told him "that their cars were stolen cars, and told him that he ought not to be trying to fool with them because he did not know enough." Against the defendant's objection, he further testified that he had a conversation with Garrett and Renfro about the time he purchased the car, in which they told him that it was a stolen car; that the defendant was not present at that time; that witness sold the car to Walter Martin, who worked for the Bomar drug store, for $375; that Martin became dissatisfied with the car, and "after Con Kiersey and Carl Holden got some cars back, one of which he had painted," he looked for them to get the Ford coupé back, so he took it back from Martin; that he called the defendant on the telephone and afterwards talked with him, and that Sipes told him to park the car somewhere and tell him where it was parked, and he would get it; that he parked the car north of the post office and told the defendant where the car was and "he said that he would see me at the First National Bank and give me the money"; that he pointed the car out to the defendant, and afterwards went inside the post office and

looked out the north door and the car was gone; that he met Sipes at the First National Bank, and Sipes paid him $100 for the car; that he turned the car over to the defendant about July 7th or 8th.

On cross-examination he testified as follows:

"Q. And that was the car you were informed against in this case? A. Yes, sir.

"Q. You have since pleaded guilty to receiving stolen property, and it was for receiving this same identical car, is that right? A. Yes, sir."

On redirect examination, he testified that, just before he took the car back from Martin, he had a conversation with the defendant and told him that there had been a couple of cars picked up here, one of which had been stolen and which had been painted in his shop, and he was afraid they would take this car from Martin, and he wanted it where they could not find it, and the defendant said he could fix it so they wouldn't know it.

It appears that witness Brady has never served the sentence imposed on his plea of guilty.

Ed Sandlin testified that he was connected with the First National Bank and was familiar with the deposit accounts, and he produced the deposit ledger showing the deposits by defendant for the month of July, and the checking account showing that on the 3d day of July, 1924, there was a check for $100 drawn against his account by the defendant; that there was no way of telling how that check was made payable.

At the close of the state's case, the defendant moved the court to direct the jury to return a verdict of acquittal for the reason that the only evidence in the case that tends to prove the defendant guilty of the crime charged against him is that of the witness Abbott Brady, who, the evidence

shows, is an accomplice, and that there is no evidence tending to corroborate his testimony.

The defendant testified that he lived at Ardmore, and in the month of July, 1924, he was there engaged in the business of buying and selling automobiles; that he never bought or handled a car from Abbott Brady; that he never gave Brady $100 for a car; that he knew nothing whatever about the car that was said to have been stolen by Renfro and Garrett.

It appears that the Ford coupé was never seen after it was in the possession of the witness Brady.

At the close of the evidence, the defendant interposed a demurrer thereto and moved the court for a directed verdict, which motion was overruled.

The defendant submitted and requested the court to give an instruction on the law of accomplice testimony and requested the court submit the question, as to whether or not the witness Brady was an accomplice, as one of fact for the jury in a form approved by this court in the case of Cudjoe v. State, 12 Okla. Cr. 246, 154 P. 500, L. R. A. 1916F, 1251. Exceptions reserved to the court's refusal to give the requested instruction.

The court instructed the jury, in part, as follows:

"If you should find beyond a reasonable doubt that the goods, or Ford automobile mentioned in the information, were previously stolen from some other person, and that the defendant bought or received it from some other person or aided in the concealment of it, and that at the time he so bought or received it, or aided in the concealment of it, if you find that the defendant did so do, and that he knew at the time that it had been stolen and that such receiving on the part of the defendant was with a dishonest intent on the part of him, the said defendant, then you will find the defendant guilty, as charged in the information, and assess his punishment as the law provides."

The term accomplice, as used in our Code, must be considered as meaning one culpably implicated in the commission of the crime of which the defendant is accused; that is, an associate, one who knowingly and voluntarily co-operates, or aids, or assists in the commission of the crime. Hendrix v. State, 8 Okla. Cr. 530, 129 P. 78, 43 L. R. A. (N. S.) 546.

Mr. Wharton, in his work on Criminal Ev. § 440, thus defines accomplice:

"One who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of the crime."

In 3 Rice on Criminal Ev. par. 318, an accomplice is defined as:

"A person involved, either directly or indirectly, in the commission of a crime. To render him such, he must in some manner aid or assist or participate in the criminal act, and by that connection he becomes equally involved in guilt with the other persons by reason of the criminal transaction."

In Cudjoe v. State, supra, we said:

"When the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury on the law of accomplice testimony and leave the question as to whether or not the witness is an accomplice for the determination of the jury as a question of fact. But where the facts are not in dispute, or where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice. Where he is admitted to be such, or where the undisputed facts show him to be an accomplice, the court may so charge, without invading the rule that the court should not comment on the credibility of any witness."

In this case, the testimony of the witness Brady is that he told the defendant that this was a stolen car. He further

testified that before he took the car back from Martin he had the following conversation with the defendant: "I told him that there had been a couple of cars picked up over here, one of which had been stolen and which had been painted in my shop, and I was afraid they would take this car from Martin, and I wanted it where they could not find it"—and that, in response to that, the defendant said: "He could fix it to where they wouldn't know it."

In the instruction given and above quoted, to which the defendant excepted, the court informed the jury that if they should find beyond a reasonable doubt that the Ford automobile mentioned in the information was previously stolen from some other person, and that the defendant bought or received it from some other person, or aided in the concealment of it, and that he knew at the time that it had been stolen, and that such receiving was with a dishonest intent on the part of the said defendant, then they will find him guilty as charged.

The testimony of Brady shows that, after advising with the defendant, he took the car back from Martin, and that the defendant was his associate, his coconspirator, his aider and abettor, in receiving the car from Martin, and in the concealment of it, and if the defendant under Brady's testimony was a receiver of the stolen car, then Brady induced, aided, and encouraged the defendant to receive such property.

It follows from what has been said that the court erred in refusing to give the instructions requested. The only other question necessary to notice is the sufficiency of the evidence to support the verdict.

The information in this case was based and the conviction had under section 2113 of the Penal Code, which declares:

"Any person who buys or receives, in any manner,

upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable by imprisonment in the penitentiary," etc.

On an information under this section the first thing to be proved is that the property, alleged to have been bought or received, was stolen. After the larceny has been proved, it becomes necessary to establish the fact that the accused received the stolen property, knowing it to have been stolen; guilty knowledge being an essential ingredient of the offense. Mullins v. State, 15 Okla. Cr. 347, 176 P. 765.

Assuming that the mere statement of the witness Renfro that he and Garrett had stolen a Ford coupé in Dallas, which they sold to the witness Brady, giving him a purported bill of sale, executed under a fictitious name, is sufficient proof of the corpus delicti. The only testimony in the case that tends to connect the defendant with the receiving of the stolen property is that of the witness Brady. He testified that he sold the Ford coupe that he received from Renfro and Garrett to Walter Martin; that, while the stolen car was in the possession of Martin, he told the defendant that Renfro had told him that it was a stolen car. There is no proof in the record that Renfro ever saw the car that Brady received from him after Brady bought it, nor is there any evidence from any witness directly to the fact that the defendant ever had possession of the alleged stolen car, except the mere inference from Brady's testimony that he left the car near the post office in the city of Ardmore to be taken by the defendant. Nobody saw the defendant take the car, nor did any person ever see the defendant with the car, not even the witness Brady.

In the absence of some independent proof that the defendant ever came into the possession of the alleged stolen car, we are inclined to think that the evidence is insufficient to sustain a conviction.

There was no testimony tending to connect the defendant with the commission of the offense charged, except that of the witness Brady, which was tested by the inflexible rule of law that a conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense. Section 2701. The testimony of the witness Brady cannot support a conviction.

For the reasons stated, the judgment of conviction is reversed and the cause remanded, with direction to dismiss.

BESSEY, P. J., and EDWARDS, J., concur.