[Crim. No. 1840. Second Appellate District, Division One.—September 27, 1929.]

THE PEOPLE, Respondent, v. HAROLD B. CRANDALL, Appellant.

Carter & Webster and John W. Holmes for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction of the crime of involuntary manslaughter, and from an order denying his motion for a new trial.

From the evidence the jury would have been justified in concluding that the essential facts in the case were that as defendant was operating an automobile southerly on a public thoroughfare at an intersection of said thoroughfare with another public highway, by reason of the failure of defendant to exercise due care and circumspection in the premises, the automobile operated by him collided with another automobile traveling in a northerly direction and thereby caused the death of two of the occupants of the latter automobile.

█ The first two points presented by appellant relate to the refusal of the trial court to give to the jury, at the request of defendant, an instruction to the effect that before defendant could be found guilty of the charge of manslaughter the jury must be "satisfied beyond all reasonable doubt that the death of the deceased ensued as a direct and proximate result of the *reckless and gross neglect* of the defendant." Although with some minor criticisms, not affecting the intent of the offered instruction, it may be said that defendant was entitled to have the substance of it given to the jury, on examination of the record herein it is noted that the principle of law contained in said proffered instruction was fully covered by other instructions given to the jury at the request of the prosecution—from which it follows that the point made by appellant is not well taken.

█ Appellant next complains that the trial court refused to give to the jury the following instruction requested by defendant:

"You are instructed that it is not unlawful under the laws of the state of California for the driver of an automobile to operate the same at a speed greater than fifteen miles per hour in traversing an intersection of highways when the driver's view is obstructed, provided he operates and drives the same at a careful and prudent speed, not greater than is reasonable and proper having due regard to the traffic, surface and width of highway, and does not drive or operate said vehicle on such highway at such a speed as to endanger the life, limb or property of any person."

In part, subdivision (b) of section 113 of the California Vehicle Act (Stats. 1923, p. 517, as variously amended), is as follows:

"Subject to the provisions of subdivision (a) of this section and except in those instances where a lower speed is

specified in this act, it shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding the following:

"...

"2. Fifteen miles an hour in traversing an intersection of highways when the driver's view is obstructed. ..."

Subdivision (a) of said section 113 provides that—

"Any person driving a vehicle on the public highways of this state shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and no person shall drive any vehicle upon a public highway at such a speed as to endanger the life, limb or property of any person." (Stats. 1923, p. 553, sec. 113 (a) (b); Stats. 1927, p. 1436, sec. 30.)

It will be noted that in effect the declared law is that at an intersection of highways where the driver's view is obstructed it is lawful to operate an automobile at a speed not exceeding fifteen miles per hour, provided that in any event he must "drive the same at a careful speed," etc. But whatever may be the correct construction of the statute, the record discloses the fact that the trial court gave to the jury an instruction in its exact language—from which it would follow that defendant was in nowise prejudiced by the refusal of the trial court to give the particular instruction requested by him. In the same connection appellant suggests that at the request of the prosecution the trial court committed error in giving to the jury the instruction to which reference has just been had. It is clear that the point advanced by appellant is without merit.

█ Prejudicial error is also predicated upon the refusal of the trial court to give to the jury, at the request of defendant, the following instruction:

"You are instructed that the driver of any vehicle upon the public highway, before starting, turning, or stopping such vehicle, shall first see that such movement can be made in safety; and if it cannot be made in safety, shall wait until it can be made in safety. Then if the operation of any other vehicle may reasonably be affected by such movement, the driver shall give a signal plainly visible to the driver of such other vehicle, of the intention to make such movement. Such signal may be given either by the use of

a hand and arm, or by means of a mechanical or electrical device which meets the requirements of the Motor Vehicle Act of this state and which has been approved by the Division of Motor Vehicles of this state. If you find that *the omission to so signal,* by Michael Sandstrom, was the direct and proximate cause of the accident and the resulting death of Eva M. A. Gwin or Permillia J. Gwin, and not the lack of due care and circumspection on the part of the defendant Harold Crandall, then you should acquit said defendant.''

With the exception of the last sentence of such requested instruction it is couched in nearly the identical language of a portion of section 130 of the California Vehicle Act. (Stats. 1923, p. 558; Stats. 1925, p. 412, sec. 15a.) A part of the defense presented by defendant was in effect that a third automobile (which immediately preceded the automobile with which the automobile operated by defendant collided as such third automobile approached the intersection of the highway where the accident occurred) turned abruptly to the left of its driver directly in the path of the automobile operated by defendant; and that in order to avoid a collision with such third automobile defendant swerved his automobile to his left and thus caused the accident which resulted in the death of the two persons named in the information which is the basis of this action.

As hereinbefore noted, the jury was generally instructed to the effect that before the defendant could be convicted of the offense charged it would be necessary for the prosecution to prove not only that *the act of defendant* ''was one which might produce death,'' but as well that it did ''cause the death of deceased.'' However, it would seem clear that defendant was not bound to rest satisfied with such a generalization of the law as applied to his construction of what were the facts of the case, but that he was entitled to a particular statement of the law dealing with his theory of the defense and consonant with the evidence or some part thereof, by which the jury would be instructed that unless the act of defendant was the proximate cause of the death of the person or persons whom defendant was accused of killing, he was entitled to an acquittal of the charge. Without consideration of the lack in the proposed instruction of directions to the jury that it must find from the evidence the existence of various and sundry conditions

which, according to the language of the statute, must be present before the driver of an intending-to-turn automobile may be required to give the or any other signal, it may be noted that at least the last sentence in such proposed instruction presents ground for legal criticism and serious objection. Such language is that "if you find *that the omission to so signal* by Michael Sandstrom was the direct and proximate cause of the accident," etc., "then you should acquit said defendant." It is manifest that the words "the omission to so signal" constituted a clear indication that the omission occurred—whereas the testimony of the respective witnesses relating to the fact as to whether Michael Sandstrom failed to give a signal was in conflict one with the other. If given, the effect of the proposed instruction to the jury would have constituted an invasion by the trial judge of the province of the jury and would have deprived it of its function to determine the fact as to whether Michael Sandstrom gave either any signal, or a proper signal, as prescribed by the statute. A statement of law that an instruction which involves such a situation is properly refused requires the citation of no authority in its support.

Finally, it is urged by appellant that, over the objection of defendant, the trial court erred in admitting in evidence the testimony of Michael Sandstrom given by him at the preliminary examination of defendant before the committing magistrate.

After it has been "satisfactorily shown to the court that he . . . cannot with due diligence be found within the state," section 686 of the Penal Code furnishes the authority for permitting "the deposition of such witness" to be read in evidence on the trial of the action. The record herein shows that as a part of the foundation for the introduction in evidence of the deposition in question, the wife of Michael Sandstrom testified that two weeks before the trial occurred he left the city of Los Angeles, to be gone perhaps as long as three months, and that following his departure the wife had received at least one letter each day from him—the last of which contained the statement, "You will hear from me in Portland." The context indicates Portland, Oregon. In addition, the testimony of a process server showed that in his attempt to serve Michael Sandstrom with a subpoena

to attend the trial, on two occasions shortly before the trial he had visited the home of Michael Sandstrom, but was unable to serve the subpoena; that on the latter of such occasions he was told by Mrs. Sandstrom that "her husband (Michael Sandstrom) was away, and had been gone about a week."

In the case of *People* v. *Lederer,* 17 Cal. App. 369, 374 [119 Pac. 949, 952], it is said: " . . . It has been held that under the provisions of this section (686 of the Penal Code) the trial judge has discretion in determining whether or not a sufficient foundation has been laid entitling such testimony to be read in evidence, and that where there is any evidence to support the conclusion affecting that matter, the ruling cannot be disturbed on appeal. (*People* v. *Nelson,* 85 Cal. 421 [24 Pac. 1006]; *People* v. *Witty,* 138 Cal. 576 [72 Pac. 177]; *People* v. *Lewandowski,* 143 Cal. 574 [77 Pac. 467].) " To the same effect is the case of *People* v. *Thomas, ante,* p. 82 [279 Pac. 826], where additional authorities are cited. It appearing that some substantial evidence was adduced to the effect that the witness could not "with due diligence be found within the state" (sec. 686, Pen. Code), from a consideration of the authorities it is clear that the judge of the trial court did not abuse his discretion in permitting the deposition of the witness given at the preliminary examination of defendant to be read in evidence.

No prejudicial error appearing in the record, it is ordered that the judgment and the order denying the motion for a new trial be and they are affirmed.

Conrey, P. J., and York, J., concurred.