## CECIL SAIED v. STATE.

No. A-9387.   Oct. 14, 1938.
(83 P. 2d 605.)

Chapman & Chapman, of Shawnee, and Billingsley & Kennerly, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Hubert Hargrave, Co. Atty., of Wewoka, for the State.

BAREFOOT, J. The defendant was charged jointly with Clyde Wakefield and Jack Kerry with the crime of arson on the 29th day of January, 1936, in Seminole county. A severance was granted defendant. He was tried, convicted and sentenced to serve a term of one year in the penitentiary, and has appealed.

It is first contended by defendant that the verdict of the jury is contrary to the law and the evidence. From a reading of the record it is revealed that the defendant was

the owner of a two-story brick hotel, known as the "Savoy Hotel" in the town of Maud, Seminole county, Okla. This hotel was rented to and being operated by Sam K. Joseph, who had leased the same from the father of defendant, Oscar Saied. The building was insured for about $7,500, and was afterwards sold for $700.

Both Clyde Wakefield and Jack Kerry, codefendants, testified for the state in this case. Their testimony was that Wakefield lived in New York state, and had left there in September, 1934, and went to Palm Beach, Fla., and visited and worked in gambling houses and other places, and had met Jack Kerry at Reno, Nev., and they had worked together and had both come to Oklahoma City in January, 1936. They met Cecil Saied in January, 1936; he had a room at the Windsor Hotel; that defendant told them he had an old vacant hotel at Maud, and that it was not making him any money, and that the best thing to do was to go down there and burn the hotel as it was heavily insured; that they agreed to burn it, and he was to pay them $200. They discussed with him the proposition of the manner of burning the same on different occasions. They went to Maud about the middle of January and stayed at the hotel two or three days, but did not burn it at that time for the reason that several people were living at the hotel. They got acquainted with Mrs. Haynes who was working at the hotel; that the defendant gave them a key to one of the rooms. They returned to Oklahoma City and talked with the defendant again, and he told them all the people were out of the hotel with the exception of two who were downstairs, and that the gasoline was in one of the rooms. This gasoline was afterwards found in one of the rooms by Mrs. Haynes. Afterwards they went to defendant's room and Ernest Adwon and Mitchell Andrews came to the room, and that the four of them left in a car for Maud between 9 and 10 p. m., and they left the defendant standing on the corner of Broadway and Second street. They arrived at Maud after midnight, and the car was

stopped in a dark place near the Savoy Hotel, and that both Clyde Wakefield and Jack Kerry left the car and in about 30 minutes Jack Kerry returned and told them they were ready to go back to Oklahoma City; that they did, and the codefendant, Clyde Wakefield, remained in Maud, staying in one of the hotel rooms that night and the next day, and on the night of January 28th, or the early morning of January 29th, set fire to the building, which burned two of the rooms and hallway, and which was finally extinguished by the fire department. The codefendant, Wakefield, walked to Seminole and there caught a train for Oklahoma City, and both witnesses were told by the defendant that they would get their money. The reason the witness Jack Kerry returned to Oklahoma City before the building was burned was that they decided it would be best for one of them to be in their room at Oklahoma City at the time the building was burned. The defendant filed suit on the insurance policies for about $2,500. The policies totaled about $7,500. The record does not reveal whether any insurance was ever paid. Both Wakefield and Kerry left Oklahoma City in about 30 days and were not paid by the defendant. They traveled to the west coast, working in gambling clubs and gambling most of the time. They started back to the east coast and stopped off in Oklahoma City, ostensibly for the purpose of trying to collect the $200 from the defendant. They were arrested and placed in jail and made written statements to the officers confessing their part in the burning of the Savoy Hotel.

Under the above testimony there is no question that under the law they were accomplices, and it was necessary for the state to corroborate their testimony before the defendant could be convicted. It is the contention of the defendant that their testimony was not corroborated, and for this reason was insufficient, and that the demurrer thereto should have been sustained. To corroborate the evidence of the codefendants, Wakefield and Kerry, the

state offered the evidence of Ernest Adwon and Mitchell Andrews. They both testified to being employed by the defendant to take the two witnesses to Maud on the night of January 28, 1936; that defendant agreed to pay $25, and Mitchell Andrews was to be paid for the use of his car. It seems that Ernest Adwon made the deal with Mitchell Andrews and that they then both saw the defendant, and defendant explained to them just what they were to do. These two witnesses corroborated in every detail the evidence of Wakefield and Kerry as to the trip to Maud and the return to Oklahoma City. These witnesses were in the room of defendant when they went to get them, and defendant told them that they were to take these parties to Maud and wait 30 minutes, and then return to Oklahoma City. They did not know what they were going there for, and did not know the hotel was to be burned. Adwon testified that after he saw the papers that the hotel was burned, he thought it had been burned by the witnesses. Adwon was a second cousin of the defendant, and Mitchell Andrews was a brother-in-law of Ernest Adwon. Ernest Adwon testified that he had had some trouble with the brother of defendant over the collision of an automobile, and that he did not feel kindly toward the defendant and his brother.

Mrs. J. D. Haynes testified that she was a maid at the Savoy Hotel, and was living there when the fire occurred. She described the fire and the damage done, and also testified that she had seen the witnesses Clyde Wakefield and Jack Kerry when they stopped at the hotel in the middle of January for two or three days. That she had also seen the defendant there some time in January, 1936, a short time before the fire.

J. A. Allred, the fire chief, and Sam K. Joseph testified to the extinguishing of the fire and the amount of damage, and to the leasing of the building.

A statement of the above evidence is sufficient to show that the witnesses Wakefield and Kerry were properly corroborated. It is contended by the defendant that the evidence shows that the witnesses Ernest Adwon and Mitchell Andrews were accomplices, and under the rule of the court, one accomplice cannot corroborate another, and their evidence should not be considered. We do not think the evidence is such as to make these parties accomplices. No such view was taken by the trial court, and at the time of the trial no request was made by counsel for defendant that they be so considered. The court was not requested to so instruct the jury. We are of the opinion that the evidence of the witnesses Wakefield and Kerry was amply corroborated.

Our court has defined an accomplice as "one culpably implicated in the commission of the crime of which the defendant is accused; in other words, an associate, one who knowingly and voluntarily co-operates or aids or assists in the commission of the crime". Hendrix v. State, 8 Okla. Cr. 530, 129 P. 78, 43 L.R.A., (N.S.) 546; Buttry v. State, 18 Okla. Cr. 330, 194 P. 286; McKinney v. State, 20 Okla. Cr. 134, 201 P. 673, 674; Sipes v. State, 36 Okla. Cr. 1, 251 P. 511.

Wharton on Criminal Evidence, section 440, defines an "accomplice" as: "One who knowingly, voluntarily and with common intent with the principal offender, unites in the commission of the crime." We do not think the evidence in this case brings the witnesses Adwon and Andrews within the terms above expressed. There is no testimony that they "knowingly" or "voluntarily" co-operated or assisted in the commission of this offense. On the other hand, the evidence is to the contrary. Knowledge that a crime has been committed and concealment of such knowledge does not make one an accomplice unless he aided or participated in the offense. Wallis v. State, 49 Okla. Cr. 58, 292 P. 1056, and cases cited therein, page 62, 296 P. 1056.

It is next contended by defendant that the court erred in permitting the state to read the transcript of the evidence of Ernest Adwon, which was taken at a former trial of this case. In the first place this testimony was given at a former trial in the district court, and was not the evidence given at a preliminary hearing. The defendant was represented by the same counsel who represented him in this trial, and the witness was subjected to a thorough cross-examination. The showing made by the state as a predicate for the introduction of the testimony was that the witness resided in Oklahoma City, Oklahoma. The fire marshal testified that he went to the home of the witness a day or so before the trial, and also the night of the day before the trial began; that he talked to the wife of the witness, and she informed him that he had gone to Iowa on a visit, and she did not know when he would return. Mitchell Andrews also testified that he went to the home of Ernest Adwon and was informed by his wife he had gone to Iowa and would not return for at least ten days; that the witness was out of the state. A subpoena was issued on the 26th day of February, 1937, and sent to Oklahoma county. This subpoena was returned on the 10th day of March, 1937, and showed that it was served upon his wife at his residence on March 8, 1937. The trial was set for the 11th day of March, 1937.

The brief of defendant cites one case in support of this proposition. Rich v. State, 51 Okla. Cr. 418, 1 P. 2d 805. The brief of the state cites one case, that of Kelley v. State, 51 Okla. Cr. 249, 300 P. 436. In the Rich Case, supra, the evidence simply showed that a deputy sheriff testified that he made a search for the witness "west of Mission City, near the Carr schoolhouse, and that thereafter he went nine miles east of Holdenville and outside of Seminole county searching for her; that he took Dr. Hunter, county health officer, and Norma Ragsdale with him; that they were unable to find the witness." [page 807] The court said: "The showing of the state was weak, but counsel

for defendant saved no exceptions to the order of the court admitting the evidence." The court affirmed the case, finding that the record showed that attorneys for the defendant were in contact with witness just before the trial, and failed to inform the state of her whereabouts. There was nothing in the case to show that the witness was in another state and out of the jurisdiction of the court, as was shown in the case at bar. The Kelley Case, supra, relied upon by the state, was a case from Tulsa county. The witness resided near the edge of the city of Tulsa, in Osage county. A subpoena was issued for him and an officer who attempted to serve it, and several other witnesses, testified that the witness was out of the state. The contention was made that the evidence that the witness was out of the state was hearsay testimony and therefore inadmissible. Judge Davenport, in the above case, overruled this contention, basing his decision upon the case of Henry et al. v. State, 32 Okla. Cr. 67, 240 P. 128, also giving as a reason therefor that counsel agreed that attorneys representing defendant were given an opportunity to interpose objections to any questions propounded to the witness in the preliminary examination, and secure a ruling upon them before an answer was returned to the jury.

We have made an independent investigation and find that this question has been presented in many different forms to this court. Many of the cases are quite similar, but do not present the same facts as in the instant case. The following cases being among those that have been read and considered: Warren v. State, 6 Okla. Cr. 1, 115 P. 812, 34 L.R.A., N.S., 1121; Henry v. State, 10 Okla. Cr. 369, 136 P. 982, 52 L.R.A., N.S., 113; Jeffries v. State, 13 Okla. Cr. 146, 162 P. 1137; Fitzsimmons v. State, 14 Okla. Cr. 80, 166 P. 453; Kearns v. State, 14 Okla. Cr. 142, 168 P. 242; Baldock v. State, 16 Okla. Cr. 203, 182 P. 265; Davis v. State, 20 Okla. Cr. 203, 201 P. 1001; Golden v. State, 23 Okla. Cr. 243, 214 P. 946; Pierce v. State, 35 Okla. Cr. 67, 248 P. 654; Henry v. State, 32 Okla. Cr. 67,

240 P. 128; Houser v. State, 41 Okla. Cr. 129, 271 P. 857; Scott v. State, 43 Okla. Cr. 232, 278 P. 393; Ritchie v. State, 46 Okla. Cr. 155, 287 P. 1110; Weil v. State, 47 Okla. Cr. 88, 287 P. 752; Turner v. State, 48 Okla. Cr. 74, 289 P. 1111; Tobin v. State, 49 Okla. Cr. 265, 293 P. 575; Kelley v. State, 51 Okla. Cr. 249, 300 P. 436; 79 A.L.R. note 1392; Smith v. State, 147 Ga. 689, 95 S.E. 281, 15 A.L.R. 495; People v. Crandall, 100 Cal. App. 785, 281 P. 81.

From a reading of the above cases it will be observed that this court has been very liberal in permitting the introduction of evidence by transcript to be read to the jury, where the proof shows that the witness is out of the state at the time of the trial. Where the facts show that the witness is a resident of the state and his absence therefrom is only temporary as was shown in this case, we think the trial court should be very careful in exercising his discretion in the permitting of evidence to be read, and especially is this true in a case where the evidence was taken in a preliminary hearing. This question was discussed very fully in the case of Davis v. State, 20 Okla. Cr. 203, 201 P. 1001, when the court said:

"We think that this court in former opinions has followed a rule sufficiently liberal in permitting testimony taken at a former trial or a preliminary hearing to be used in the absence of the witness, and that this court should not, by judicial construction, extend or enlarge upon the rule announced in former decisions. In many instances the prosecuting officer might prefer to have the testimony taken at a former hearing read to the jury rather than to run the risk of having the witness appear upon the witness stand to be subjected to a rigid cross-examination in the presence of the jury. To lay down the rule that a mere showing that a resident witness is in another state and that no effort or diligence to produce the witness in open court need be shown might enable public prosecutors and others, if it appeared to their interest, to cause witnesses to absent themselves from the jurisdiction of the court to escape further cross-examination. To say that no diligence is required to produce the witness in open court, where it

is possible to do so, is not in keeping with the spirit or the letter of the constitutional guaranty that a defendant in a criminal action has a right to be confronted face to face with the witnesses against him. Warren v. State, 6 Okla. Cr. 1, 115 P. 812, 34 L.R.A. (N.S.) 1121; Baldock v. State, 16 Okla. Cr. 203, 182 P. 265; Temple v. State, 15 Okla. Cr. 176, 175 P. 733. As to witnesses out of jurisdiction, see notes to 25 L.R.A. (N.S.) 874; Motes v. U.S., 178 U.S. 458, 20 S. Ct. 993, 44 L. Ed. 1150.

"We do not mean to say or intimate that the county attorney or those interested in this prosecution did not desire the presence of the witness Hall. What we do mean to hold is that it would be dangerous to relax the rule that a reasonable effort and diligence to produce the witness should be shown, where he and his place of residence were within reach of the court's processes after the cause was set for trial, and in our opinion no such showing was made here. The defendant should not be deprived of the right to be confronted by the prosecuting witness at the final trial merely because the witness desired to transact important business in another state."

In the case at bar many of the propositions urged in the Davis Case have been eliminated. The testimony read was that given at a former trial and not at a preliminary hearing. Defendant was represented by the same counsel, and a searching cross-examination given to the witness before the district judge who well understood the rules as to the admissibility of evidence. The record revealed that a subpoena had been issued to the county where the witness resided and returned showing service upon his wife at his residence. No subpoena had been issued in the Davis Case. There was nothing in this case to show that the state did not desire the presence of the witness Adwon rather than to read his testimony.

In the case of Houser v. State, 41 Okla. Cr. 129, 271 P. 857, this court held that the predicate laid was not sufficient, but that the evidence of the witness was cumulative, and therefore the case would not be reversed. The same is true in this case. The evidence of the witness

Ernest Adwon and Mitchell Andrews was practically the same and no doubt the same results would have been reached, had the testimony of the witness Adwon not been introduced.

If the testimony of Ernest Adwon stood alone as the only evidence corroborating the witnesses Wakefield and Kerry, the plea for a reversal of this case would appeal to us much stronger, but with the evidence of Mitchell Andrews and others corroborating their testimony, and in view of the opinions heretofore expressed by this court, it is our opinion that the judgment of the district court of Seminole county should be affirmed, and it is so ordered.

DAVENPORT, P. J., and DOYLE, J., concur.