Bobby KIRBY, Appellant,

v.

STATE of Oklahoma, Appellee.

No. A–16548.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1973.

Stansell Whiteside, Altus, for appellant.

Larry Derryberry, Atty. Gen., Sondra Leah Fogley, Asst. Atty. Gen., for appellee.

OPINION

BLISS, Judge:

Appellant, Bobby Kirby, hereinafter referred to as the defendant, was charged, tried and convicted in the District Court of Jackson County, Oklahoma for the offense of Receiving Stolen Property, the Information being drawn under 21 O.S.1971, § 1713. The verdict assessed the maximum punishment prescribed by the statute, imprisonment in the penitentiary for five (5) years, and from the judgment and sentence, a timely appeal has been perfected to this Court.

The State's evidence in chief shows substantially that on January 21, 1970, about 1:00 o'clock in the morning, three teenage boys, Frankie Robinson, Ricky Maxwell, and Elwin Shipp, under their own testimony, broke into Tucker's Tavern in Jackson County and stole approximately 70 cases of beer together with various other items of personal property; they cached the beer under several bridges and culverts in the vicinity of Southside School located about 12 miles south of Altus; Robinson and Maxwell were members of the Southside basketball team and a tournament was in progress at the school on the date of the burglary. Some hours after the burglary, the oldest boy, Robinson, 18 years of age,

approached Albert Ward, a sixth-grade school teacher and a basketball coach at Southside School and told him of the burglary and asked him to help them sell the beer; Ward agreed and advised he would let them know the next day.

Ward, as a State's witness, testified that later he went to a private club known as the "Dutch Inn" and talked with the owner, Bobby Kirby, defendant, about purchasing the beer and she agreed to purchase 22 cases of the beer at the quoted price of $3.00 per case. Defendant asked if the beer was stolen and Ward told her it was; she asked from whom and then told Ward she did not really wish to know, and he did not tell her. Later, under Ward's testimony, he talked with Robinson at the school gymnasium and arranged that the two meet after the basketball game that night and load the beer in Ward's car. This was done, and Ward then delivered the beer to the defendant; he delivered it alone and the defendant paid him the agreed price of $66.00, which, as testified by Ward, he later gave to Robinson for division among the three, Robinson, Shipp, and Maxwell.

Robinson testified that he received the money and divided it among the three equally. The record in the case reveals that all three were subsequently charged with burglary, pled guilty, and received deferred sentences.

On cross-examination, Ward testified that after learning of the burglary, he never reported it to any officer, but did give a signed statement at the District Attorney's office following the arrest of the three boys; that charges were never filed against him for his participation in the case. Further, on cross-examination, Ward admitted he had been a card member of the "Dutch Inn," no longer was such member, but denied he had been ejected from the club and his membership card taken from him.

The State then rested its case in chief, whereupon the defendant, without demurrer to the evidence or motion for acquittal,

or any other record, proceeded with her evidence.

The defendant testified in her own behalf, and told of previous trouble with Albert Ward as a member of her private club, the "Dutch Inn"; that he had been ejected from the club because of bad conduct and his membership card was taken from him. She positively and emphatically denied any knowledge of the beer, denied she had been approached by Ward to buy the beer, or that she had ever purchased beer from him at any time or any place, and that his testimony was false and prompted by ill feeling toward her.

Without objection, two witnesses testified defendant's reputation for honesty was good, and with these two witnesses, the defense rested. In rebuttal, Ward testified as to certain matters of little importance.

Both the State and the defendant rested. Again, the defendant made no record either by demurrer or by motion for directed verdict for acquittal.

In her appeal, the defendant asserts two specifications of error: (1) "That the court erred in admitting the rebuttal testimony of Albert Ward over the objection of the defendant"; and, (2) "That the court erred in failing to instruct the jury on the laws of the State of Oklahoma regarding the testimony of an accomplice." We find little, if any, merit in either specification.

■ As we view the entire record, there was no reason for the case to be submitted to the jury except for a directed verdict of acquittal. The undisputed evidence in the case is that the State's principal witness, Albert Ward, was an accomplice. After the crime of burglary was entirely completed, Ward entered the picture and aided, abetted, and assisted the defendant in receiving the stolen property.

Title 22 O.S.1971, § 742 provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient it if merely show the commission of the offense or the circumstances thereof."

The testimony of Ward that he sold and delivered the beer to the defendant is not corroborated by direct evidence or circumstantial evidence. There is not the slightest corroboration in any manner or in any degree. This case reveals the wisdom of the statute. Under the testimony of Ward, a school teacher, he stated publicly that rather than being a wholesome influence on his three students, he aided and assisted them in disposing of merchandise obtained by burglary. He helped hide it, he helped conceal it, and standing alone, his testimony is unworthy of belief, and hence, the wisdom of the statute.

In Sipes v. State, 36 Okl.Cr. 1, 251 P. 511 (1926) this Court held that where evidence as to whether a witness participated in a crime conflicts, the question of whether he is an accomplice is for the jury; where acts and conduct of a witness are admitted, the question of whether he is an accomplice is one of law for the court; in prosecution for receiving stolen property, where only evidence showed the State's witness was an accomplice and he was uncorroborated, refusal to direct a verdict of acquittal was error.

■ As indicated above, at the conclusion of the State's evidence in chief, the defendant did not move for a directed verdict of acquittal, as contemplated by the applicable statute, nor demur, often done, but not contemplated by statute. Did the defendant waive her right in this regard? Title 22 O.S. § 850 provides:

"If, at any time after the evidence on either side is closed, the court deem it insufficient to warrant a conviction, it may advise the jury to acquit the defendant. But the jury are not bound by the advice, nor can the court, for any cause, prevent the jury from giving a verdict."

In the case of Boyles v. State, 29 Okl.Cr. 44, 232 P. 453 (1925) this Court has held

in construing said section of the statute as follows:

"It is made the duty of the court, when it deems the evidence insufficient to warrant a conviction, to advise the jury to acquit. [Citation Omitted]

"Obviously the verdict in this case is not supported by the evidence, and it was the duty of the trial court, of its own accord, without its attention being especially called thereto, to have directed a verdict of acquittal."

Although the defendant at the close of the State's evidence should have moved the court to direct a verdict of acquittal, we hold, as in the language above quoted, it was the duty of the court of its own accord, and without its attention being especially called thereto, to have directed a verdict of acquittal. Accordingly, the judgment of conviction is reversed, and the cause is remanded, with directions to dismiss.

BRETT and BUSSEY, JJ., concur.